LITTLE ROCK & HOT SPRINGS WESTERN RAILROAD COMPANY

*v.* CROSS.

Opinion delivered March 24, 1906.

1. EVIDENCE—COMPETENCY.—In a suit in which plaintiff sought to recover for injuries alleged to have been received by him by reason of defendant's negligence in driving another car against the one which he was unloading, where defendant attempted to prove that its employees notified a boy who was assisting plaintiff outside that they were going to couple on to the car, it is competent to prove that the boy who was assisting plaintiff was inside the car with him at the time plaintiff was injured. (Page 224.)

2. SAME—HEARSAY.—The testimony of a witness as to how another was injured was hearsay and incompetent where his knowledge was derived from the injured person three days after the injury was received. (Page 225.)

3. SAME—WAIVER OF OBJECTION.—Where the incompetency of evidence introduced by plaintiff was first disclosed on cross-examination by defendant, and defendant failed to move to exclude the evidence, the objection was waived. (Page 225.)

4. RAILROAD—NEGLIGENCE—INSTRUCTION.—Where plaintiff, while unloading a car into a wagon, was injured by reason of another car being driven against such car, it was not error to refuse to instruct that defendant's employees were justified in assuming that, if there was a boy on the wagon, it was his duty to notify plaintiff, who was in the car, of the approach of the other car. (Page 225.)

5. SAME—NEGLIGENCE.—It was not error to refuse to instruct the jury that if there was a boy in plaintiff's wagon, and defendant's employees did not know there was any person in the car, they had a right to presume that the person in the wagon was in charge thereof, and the law would not require them to look in the car to see if there was some one in there. (Page 225.)

6. DAMAGES FOR PERSONAL INJURY—EXCESSIVENESS.—A verdict for $3,000 as damages for personal injuries will not be set aside as excessive where the evidence shows that before the injuries plaintiff was earning $75 per month while afterwards he was earning $1.50 per day; that before the injury he was a vigorous man, but since has been helpless; that his injuries were serious, causing intense suffering, and were probably permanent. (Page 226.)

Appeal from Garland Circuit Court; *Alexander M. Duffie,* Judge; affirmed.

STATEMENT BY THE COURT.

This was a suit for personal injury. Plaintiff charged that

on December 4, 1903, while he was in a box car in the railway
company's yards at Hot Springs, Arkansas, unloading brick into
his wagon, the employees of the railway company negligently
and carelessly, with great force, caused another car to be driven
against the car which he was in with such force as to injure him
for life, and asked for damages in the sum of $5,000.

The defendant answered, denying each and every allegation
of the complaint, and then charged contributory negligence on the
part of plaintiff.

The proof on behalf of appellee tended to show that on
December 8, 1903, appellee, who was working for the Merchants
Transfer Company at Hot Springs, went to the yards of appellant
to unload a car of brick. It was the usual thing for freight
to be handled from the cars on the track where appellee was at
work. He placed his wagon alongside the car, and began unload-
ing brick therefrom. While in the car at work, standing in a
stooping position, another car was backed against the car he
was in with such great force as to send it about forty or fifty
feet from the position it occupied when appellee began unloading
it. Appellee's head struck against the car, and he was rendered
unconscious. He was thrown prone upon his back six or eight
feet from where he stood when the crash came. He was uncon-
scious for about two days, and remained in semi-conscious condi-
tion for about a week after the accident.

On behalf of appellant, the proof tended to show that when
the coupling was made to the car appellee was in, a negro was in
the wagon by the side of the car, and the brakeman making the
coupling said to him: "We are going to couple on the car."
That appellant's employees having the work in hand did not know
that any one was in the car at the time the coupling was made.
None of the train crew could see or know that the appellee
was in the car. They had looked in the car that morning, and no
one was in it. The man in the wagon, when notified that they were
going to couple on to the car, made no response. He could see
the cars coming back. The coupling was made in the usual way.
In rebuttal, appellee testified that at the time the coupling was
made a boy nearly as light as he was in the car with him; that
they walked back and forth, throwing brick into the wagon
from the car; that they did not step out into the wagon, but threw

brick in it from the car; that the boy was in the car with him when it was struck. The boy whom appellant's witnesses say they saw on the wagon was described by them as being a young "black-looking negro," "pretty dark, and not very light" "eighteen or nineteen years old." Other testimony corroborative of this was introduced. Then one Page was introduced, who testified as follows:

"Q. You know this boy that was working down there with plaintiff at the time of the accident? A. Yes, sir; his name was George; don't remember his last name."

The above question and answer were objected to by defendant; and, upon the objection being overruled, defendant saved its exceptions.

"Q. What color boy is he? A. He was a light boy, about as light as that girl sitting there (indicating).

"Q. How soon after the accident did you see him? A. That evening.

"Q. You know whether or not he was hurt? A. Yes, sir.

"Q. What did you see? A. He was bruised upon the legs and then his arms. I took him to Dr. Hebron to treat him.

"Q. When you carried him to Dr. Hebron, how long was that after the accident? A. Two or three days.

"Q. He did have bruises on his limbs? A. Yes, sir; and on his arms; he was complaining about it."

Defendant at the time separately objected to each of the above six questions and answers, and, the objections being overruled, defendant at the time saved its separate exceptions.

On cross-examination witness testified:

"Q. Page, you are one of the attorneys in this suit? A. Yes, sir.

"Q. You don't know anything about where he was injured, except what he told you? A. Well, I could see the abrasion of the skin.

"Q. You don't know anything about how he received his injuries, except what he told you? A. Oh, no, sir.

"Q. And when you saw it was when you took him to a doctor? A. Yes, sir.

"Q. And that was two or three days after the injury? A. Yes, sir; before I took him down there.

"Q. Was the negro lighter or darker than Charley? A. Darker than he is.

"Q. His name is George is all you know? A. I have his name on my book.

"Q. Do you know where he is? A. I heard he went to Memphis.

"Q. How recently? A. I think just before this trial.

"Q. You didn't have him subpœnaed? A. No, sir; when I heard he was gone, I thought I could get along without him."

Among the prayers refused are the following asked by appellant:

"8. If you find from the evidence that defendant's employees saw the wagon and some person in it, and saw that the wagon was not so near the train as to be in danger, and if you further find, that they were not aware that any one was within the car, they had the right to presume that there was no one in the car, that the negro in the wagon had charge of the wagon, and they were not guilty of negligence in going on and coupling on to the brick car; and if you believe and find from the evidence that the trainmen saw a man in the wagon, and told him they were going to couple onto the car, and the wagon was far enough from the train to be out of danger, and they were not aware that any one was in the car, your verdict must be for the defendant."

"11. If you find from the evidence that the negro who was working with plaintiff knew that the train was coming down on the same track that the car that plaintiff was in was on, and negligently failed to notify plaintiff when, if he had notified plaintiff, he would have avoided the injury, then the negligence of the negro who was working with plaintiff will be imputed to the plaintiff, and bar his recovery in this case."

"15. You are instructed that if defendant's servants saw a person apparently in charge of the wagon, and did not know there was any person in the car, they had a right to presume that the person in the wagon was in charge of the wagon, and the law would not require them to go and look in the car to see if there was some one in there."

The verdict and judgment were for $3,000.

*B. S. Johnson,* for appellant.

1.   The court erred in permitting inadmissible evidence to go to the jury.

2.   It was error to refuse the 8th, 11th and 15th instructions asked by defendant.   When defendant's employees, seeing the negro in charge of the wagon, and not knowing that any one was in the car, warned the one in the wagon, they did all that was required of them in the exercise of ordinary prudence.   They had the right, having once visited the car and found no one in it, to presume that the wagon was in charge of the negro whom they saw in it.   See 65 Ark. 275.

3.   The verdict, under the evidence, was excessive.

*Wood & Henderson,* for appellee.

The court did not err in permitting witness Page to testify as he did.   The 8th, 11th and 15th instructions asked by defendant were properly refused, and the verdict was not excessive.

WOOD, J., (after stating the facts.)   1.   The facts sought to be established by the witness Page by the examination in chief were competent.   Witnesses for appellant had testified that there was a negro boy on the wagon at the time appellee was hurt, and they gave the description of the negro as a "black-looking negro." This was in contradiction of the testimony of appellee, which tended to show that the boy was in the car with him at the time he was hurt, and that the boy that was with him was a mulatto. The testimony of Page tended to corroborate the testimony of appellee.   The fact that the boy was seen by him that evening after the accident with bruises upon his arms and limbs, and that he was a mulatto instead of a black-looking negro, tended to corroborate and strengthen the testimony of appellee that the boy was with him in the car at the time of the accident.   This testimony tended, therefore, necessarily to disprove the testimony of appellant's witnesses that the boy was upon the wagon at the time of the injury to appellee.   There is no contention that the witnesses for appellee and appellant were testifying about a different boy.   It is assumed that they were talking about the same boy, and there is no contention that there were two boys there besides appellee.   Page was asked about "the boy that was working down there with plaintiff at the time of the accident," and his answers show that this was the boy he was

describing. The testimony was competent, relevant and material.

But it was discovered on cross-examination that Page only found out that the boy was injured when he took him to the doctor, two or three days after the accident, and he only knew about how it was done from what the boy told him. This rendered that part of his testimony incompetent, and too remote. It was hearsay evidence, and prejudicial. But appellant, after thus bringing out these facts, did not ask the court to exclude the evidence. It elicited the evidence itself on cross-examination, and it waived all objection to its incompetency by not moving the court to exclude it after such incompetency was discovered.

2. The court's ruling was correct. Instructions numbered eight and fifteen assume, as matter of law, that the appellant had exercised ordinary care to prevent the injury to appellee if it notified the boy on the wagon that it was about to couple on to the car. This proposition assumes the existence of too many facts which should be left to the jury to ascertain. And then, after ascertaining the facts, it was still a question for the jury to determine whether appellant, under the facts proved, was negligent. For instance, these instructions assume that, if appellant's servants saw a boy on the wagon, they had a right to presume that no one was in the car. *Non sequitur.* The facts were, as the proof showed, that there were two boys there. The evidence conflicts as to whether or not they were both in the car at the time of the accident. It was a question for the jury to determine whether the boys were in the car, or whether one was in the car and the other on the wagon at the time of the injury; and if there were two, what was their status to each other and the company; and it did not follow at all that, if one boy was on the wagon, there was no one in the car. And the company had no right to assume, as the instructions indicate, that if there was a boy on the wagon he would communicate the notice to the boy in the car. There was no proof that the boy in the car and the one on the wagon, if there was one also on the wagon, held such status to each other as to warrant the assumption that the boy in the car was responsible for the conduct of the boy on the wagon, and *vice versa,* or that the conduct of the boy on the wagon was imputable to the boy in the car. This instruction No. 15 assumes.

We see nothing in the evidence to warrant the conclusion, as matter of law to be told the jury, that if there was a boy on the wagon it was his duty to warn the appellee, who was in the car, and that, if he failed to do so, he was guilty of negligence which should be imputed to appellee, and that the railway 'company had the right to assume that the boy on the wagon would notify the boy in the car, and to act accordingly. The whole tenor and legal effect of the instructions were to take from the jury the very question which it should determine, namely, as to whether or not the appellant, under all the facts which the jury might find from the evidence, was guilty of negligence.·

The questions involved in these instructions were elaborately presented to the jury in general terms, in proper form, in other instructions. We find no error in the court's charge.

3. The verdict was not excessive. Appellee in his regular calling, for which the accident unfitted him, had earned as much as $75 per month. At the time of the accident he was earning $1.50 per day. He was before the injury a vigorous young man. Since, most of the time, he has been helpless as a child. His injuries were serious, painful and probably permanent. The suffering was intense.

Considering all the elements for which damage should be allowed, we do not feel authorized to disturb the verdict as to the amount.

Affirm.