KELLEY *v.* STATE.

Opinion delivered December 20, 1920.

1.  HOMICIDE—EVIDENCE—DECEASED'S GENERAL REPUTATION.—Where, in a murder case, the defendant had introduced evidence tending to prove, in support of his plea of self-defense, that deceased had been having illicit intercourse with his wife, that he had been warned to stay away from defendant's home, and that at the time of the killing he had ignored the warning and was attempting to invade defendant's home, it was not competent for the State to prove that in the community where deceased resided his general reputation for morality was good.

2.  HOMICIDE—INSTRUCTION AS TO INSANITY.—An instruction in a murder case that if "at the moment that defendant fired the fatal shot his reason was so dethroned that he did not know right from wrong, was incapable of controlling his actions, and this mental derangement arose from anger, fury or malice, he is guilty of an unlawful homicide," *held* erroneous.

3.  CRIMINAL LAW—MEDICAL EXPERTS.—Medical experts, where duly qualified as such, are competent witnesses on the issue of insanity, and their opinions, expressed in answer to correct hypothetical questions embracing data which the evidence tends to prove, are relevant testimony.

4.  CRIMINAL LAW—FORM OF HYPOTHETICAL QUESTIONS.—Hypothetical questions must contain all the undisputed facts essential to the issue.

5.  CRIMINAL LAW—HYPOTHETICAL FACTS.—Where there is a dispute about the existence of the facts stated in a hypothetical question, it is the exclusive province of the jury to determine whether such facts do exist.

6.  CRIMINAL LAW—OPINION BASED ON HYPOTHETICAL FACTS.—Since an expert's opinion is based upon the assumption of the truth of the hypothetical questions put to him, if the jury finds that any fact stated in the hypothetical question is untrue, the jury must disregard the expert opinion based on such question; but if the jury finds that all the data stated in the hypothetical question are true, they must consider the opinion of the expert in connection with all the other evidence in the case.

7.  CRIMINAL LAW—WEIGHT OF EVIDENCE.—The rule that the jury is the sole judge of the credibility of witnesses and of the weight to be given their testimony applies to the opinions of experts.

Appeal from Logan Circuit Court, Southern District; *Jas. Cochran,* Judge; reversed.

*John P. Roberts and Evans & Evans,* for appellant.

1.   The court erred in refusing a new trial because of improper and prejudicial influences to which the jury was subjected. The jury were permitted to separate during the periods of adjournment of court before and after the case was submitted to them and were never put in charge of a bailiff as required by statute. If the jury were subjected to improper influences while permitted to separate, this, on its face, impeaches the integrity of the verdict. 57 Ark. 1; 44 *Id.* 115; 62 *Id.* 554.

2.   The court erred in its instructions in regard to the testimony of experts. 49 Ark. 147, 439; 50 *Id.* 511.

3.   The court erred in permitting the State to prove by witnesses that the general reputation of deceased for morality was good. Underhill on Cr. Ev., § 325; 76 Ark. 493; under Cr. Ev., § 234; 75 Ark. 297; Bishop's New Cr. Proc., vol. 3, § 612; 21 Cyc. 908. The general rule in homicide cases is that it is not competent to introduce evidence for the purpose of proving the good character of deceased until his character is assailed. 96 Ky. 212; 28 S. W. 500; 90 Ala. 602; 8 So. Rep. 858; 94 N. C. 987; 1 Tenn. Cases 505; 103 Va. 816; 171 S. W. 149. See, also, 99 S. E. 874; 172 Pac. 189; 190 S. W. 290; 21 Cyc. 908.

4.   The court erred in its instruction defining insanity. 50 Ark. 511; 101 *Id.* 586; 54 *Id.* 588; 120 *Id.* 553; 54 *Id.* 588.

*John D. Arbuckle,* Attorney General, and *Silas W. Rogers,* Assistant, for appellee.

1.   The mere fact that an attempt, either directly or indirectly, was made to influence the verdict of the jury for or against the appellant, would not of itself be a prejudicial influence. 130 Ark. 189. Where it appears that the juror was not influenced, a new trial will not be granted. 102 Ark. 525; 130 *Id.* 189. No prejudice was shown, and it was a matter within the discretion of the court. 102 Ark. 525.

2.   The instruction in regard to the testimony of experts correctly states the law, and no specific objection an issue in the case. Bloomer v. State, 75 Ark. 297.   See, 530, 595.   Specific objection should have been made and the court's attention specifically called to any defect or ambiguity or error.   96 Ark. 531; 98 Id. 227; 97 Id. 108. The instruction is not a charge upon the weight of the evidence.   50 Ark. 511.

3.   The question as to the character of the deceased was not raised by the State but by appellants in questions asked witnesses by the defense.   3 Enc. of Ev., p. 28. See, also, Ib., p. 14.   13 Kan. 414.

The exceptions were too general.   74 Ark. 355; 48 Id. 177; 66 Id. 264.

4.   The court's instruction as to or definition of insanity is a correct statement of the law.

WOOD, J.   The appellant was indicted for the crime of murder in the first degree in the shooting and killing of one Abe Quinalty.   He was tried and convicted of murder in the second degree and by judgment of the court sentenced to ten years in the State penitentiary. He appeals.

The testimony on behalf of the State was sufficient to sustain the verdict.   The appellant set up self-defense and also insanity, and the testimony in his behalf warranted the submission of these issues to the jury.   There was testimony on behalf of appellant tending to prove that Quinalty, for several months prior to the killing, had been having illicit relations with the wife of appellant; that appellant had knowledge of this fact and had remonstrated with Quinalty and forbade his coming to appellant's home.   Several witnesses testified for the defendant that his general reputation in the community where he lived for being a peaceable and law-abiding citizen up to the time of the killing was good.   These witnesses, on cross-examination, were asked if they were acquainted with the general reputation of Quinalty for morality in the community where he resided.   They were

permitted over the objection of appellant to answer in the affirmative, and that his reputation was good. Appellant objected, and the court directed his counsel to save his exceptions.

The questions propounded by the State on cross-examination were not responsive to any questions that had been asked by the appellant in the direct examination. The testimony elicited by the questions was therefore in the nature of primary evidence offered by the State of the good moral character of the deceased when the same had not been put in issue by the appellant. True, the appellant had introduced testimony tending to prove that the deceased had been having illicit relations with appellant's wife, but these specific acts of the deceased did not tend to prove that he had the general reputation of being a lecherous and licentious man. In exculpation or mitigation of the charge, it was competent for the appellant to show the circumstances connected with the killing. It was competent for him to prove that Quinalty had been having illicit intercourse with his wife, and that on this account he had been warned to stay away from appellant's home, and that at the time of the killing he had ignored the warning and was attempting to invade appellant's home. But it was not competent for the appellant to prove that Quinalty had the general reputation in the community where he lived of being a man of bad moral character. The most that appellant under the circumstances could have proved was that the deceased had the general reputation of being a violent and dangerous man. If the appellant had done this, it would have been competent for the State to have introduced evidence in rebuttal showing that Quinalty's general reputation was that of a peaceable and law-abiding citizen. But, on the issue as to whether or not the deceased, Quinalty, was guilty of improper intimacy with appellant's wife, it was not competent for the State to prove that in the community where Quinalty resided his general reputation for morality was good. Under the

defenses set up by appellant, the general reputation of Quinalty for morality was not and could not have been an issue in the case. *Bloomer* v. *State,* 75 Ark. 297. See, also, *Long* v. *State,* 76 Ark. 493; Bishop's New Criminal Procedure, vol. 3, § 312; *Childers* v. *Commonwealth,* 171 S. W. (Ky.) 149; *Parker* v. *Commonwealth,* 96 Ark. 212; 21 Cyc. 908; *State* v. *Johnson,* 172 Pa. 189; *Kennedy* v. *State,* 37 Sou. (Ala.) 90; *State* v. *Dickson,* 190 S. W. (Mo.) 290; *Phillips* v. *State,* 99 S. E. (Ga.) 874.

The manifest purpose of the above testimony was to lead the jury to believe that, since Quinalty was shown to be a man of good moral character, it was not probable that he would have been guilty of adultery with appellant's wife, to which appellant testified, and which the testimony of Mrs. Ella Bird and Mrs. Laura May tended to prove. Thus the prosecution was permitted by the above testimony to impeach and contradict in an indirect manner the testimony of appellant and his witnesses. At least such was the probable effect of the testimony. This method of impeaching witnesses is not authorized by statute or sanctioned by any rules of evidence. Kirby's Digest, § 3138. The testimony was incompetent and prejudicial.

II. There was testimony tending to prove that the appellant at the time of the killing was insane. Among others, the court gave the following instructions on the defense of insanity:

"No. 19. The defendant interposes the defense of insanity. Insanity is a disease of the mind, and is not a defense to a criminal charge unless it arises out of some disease of the mind, and at the time of the commission of the offense charged renders the defendant incapable of knowing right from wrong, or if he did know right from wrong incapable of controlling his actions. One's reason may be dethroned to such an extent as to render him incapable of knowing right from wrong, incapable of controlling his actions, by fury, anger or malice, but this is not in law, insanity, nor does proof

of such condition of the mind at the time of the commission of an offense constitute any defense, if it grows out of anger or malice and not out of a diseased condition of the mind.

In other words, in this case, if the defendant was, at the time he fired the fatal shot at deceased, insane to such an extent that he did not know right from wrong or, knowing right from wrong, was incapable of controlling his actions, and this insanity arose from some disease of the mind, he is entitled to an acquittal; but, if, on the other hand, at the moment that he fired the fatal shot his reason was so dethroned that he did not know right from wrong, was incapable of controlling his actions, and this mental derangement arose from anger, fury, or malice, he is guilty of an unlawful homicide, and you should so find and fix the degree in accordance with the definitions of homicide which have been given you by the court.

"No. 20. As to whether or not defendant knew the difference between right and wrong and the nature and consequence of his act, or was able to avoid killing the deceased at the time the alleged offense was committed, is a question for the jury to determine from all the facts and circumstances and testimony before you in the case."

The court made the responsibility of the defendant for the alleged crime depend upon whether or not the defendant was incapable of knowing right from wrong, or incapable of controlling his actions. In the recent cases of *Bell* v. *State,* 120 Ark. 530, and *Hankins* v. *State,* 133 Ark. 38, after reviewing the doctrine of our own cases and the authorities generally on the defense of insanity, we announced the law as follows:

"Where one is on trial for murder in the first degree, and the State proves the killing under circumstances that would constitute murder in the first degree if the homicide was committed by some sane person, then, if the killing is admitted and insanity is interposed as a defense, such defense can not avail unless it appears

from a preponderance of the evidence, first, that at the time of the killing the defendant was under such a defect of reason from disease of the mind as not to know the nature and quality of the act he was doing; or, second, if he did know it, that he did not know that he was doing what was wrong; or, third, if he knew the nature and quality of the act, and knew that it was wrong, that he was under such duress of mental disease as to be incapable of choosing between right and wrong as to the act done, and unable, because of the disease, to resist the doing of the wrong act which was the result solely of his mental disease.''

''But it must be remembered that one who is otherwise sane will not be excused from a crime he has committed while his reason is temporarily dethroned, not by disease, but by anger, jealousy or other passion, nor will he be excused because he has become so morally depraved that his conscience ceases to control or influence his actions.'' *Bell* v. *State, supra,* pp. 553, 555.

The instructions given by the court do not conform to the law as announced in the above cases. In those cases the whole subject was gone into as thoroughly as could be done by the writer, who voiced the opinions of the court. We deem it unnecessary here to do more than call the attention of court and counsel to those cases which must have been overlooked in the framing of the charge to the jury.

III. Medical experts, when duly qualified as such, are competent witnesses on the issue of insanity. Their opinions expressed in answer to correct hypothetical questions embracing data which the evidence tends to prove, are relevant testimony. Hypothetical questions must contain all the undisputed facts essential to the issue. Where there is a dispute about the existence of the facts stated in the hypothetical question, it is the exclusive province of the jury to determine whether such facts do exist. The truth or existence of each and every fact included in the hypothetical question is assumed.

The opinions of the experts are built upon this assumption; and if this foundation falls, the superstructure goes with it. Therefore, if the jury finds that any fact stated in the hypothetical question is untrue, does not exist, the jury must then disregard the opinion of the experts. But, on the other hand, if the jury finds that all the data stated in the hypothetical question exist, are true, then the jury must consider the opinion of the experts in connection with all the other evidence in the case. The jury is the sole judge of the credibility of the witnesses, that is, of the weight to be given their testimony. This applies to the opinions of the experts as well as to the testimony of the other witnesses. Under the guidance of instructions given it by the trial court, the jury is the sole and final arbiter of the issues of fact as to the sanity or insanity of the accused. In determining that issue, the jury may give to the opinion of the experts, as well as to the testimony of any other witness, just such weight as the jury, under all the circumstances, believes it deserves. On the propositions of law announced in part III, see *Taylor* v. *McClintock,* 87 Ark. 243; *Ford* v. *Ford,* 100 Ark. 518; *Williams* v. *Fulkes,* 103 Ark. 196; *Williams* v. *State,* 50 Ark. 511; *Ark. S. W. Ry. Co.* v. *Wingfield,* 94 Ark. 75; *Green* v. *State,* 64 Ark. 532; Lawson, Expert and Opinion Evidence, pp. 64, 162-64-77-260-282; Rogers, Expert Testimony 79, §§ 27, 32, 44; *Turnbull* v. *Richardson,* 69 Mich. 400-420; *People* v. *Foley,* 64 Mich. 148, 156. See, also, *Quinn* v. *Higgins,* 63 Wis. 664; 1 Greenleaf on Ev., pp. 561-62; 2 Jones, Com. on Evidence, § 371 (373) pp. 901 *et seq.,* 906 and cases cited in note on page 906.

The instruction given by the court concerning the testimony of the medical experts was in the main correct, and, in the absence of any specific objection to it, we would not have reversed the judgment on account of the ruling of the court in giving this instruction. However, we could not approve the instruction in the form given, as a precedent, and hence we do not set it out, but

instead have announced the rules of law upon the subject as above.

For the errors indicated, the judgment is reversed and the cause is remanded for a new trial.