PAYNE *v.* THURSTON.

Opinion delivered May 9, 1921.

1.  CARRIERS—TIME FOR PASSENGERS TO ALIGHT.—It is the duty of carriers to allow their passengers a reasonable opportunity to alight, and in determining what is a reasonable time they should take into consideration any special condition peculiar to any passenger and to the surroundings at the station.

2.  CARRIERS — FAILURE TO ASSIST PASSENGER — NEGLIGENCE.—Under the evidence, whether the servants of a carrier were negligent in not allowing a passenger sufficient time to debark from a train, and in not rendering her assistance in debarking, *held* for the jury.

3.  CARRIERS—DUTY TO ASSIST PASSENGER.—While there is no affirmative duty on the part of the trainmen to ascertain the physical condition of passengers or other conditions and circumstances making it necessary to render them special assistance in debarking from the train, yet where the passenger's physical ailment or other conditions are such that the trainmen in the exercise of ordinary care are bound to observe that the passenger requires assistance in getting off the train, it is their duty to render it.

4.  EVIDENCE—STATEMENT AS TO PAST EVENT.—A statement by one that she had fallen from defendant's train and hurt her knee, and that she was unable to walk, was inadmissible, being a narrative of a past event and not in the nature of *res gestae.*

5.  APPEAL AND ERROR—HARMLESS ERROR—ADMISSION OF EVIDENCE.— The erroneous admission of evidence was harmless where other evidence to the same effect was admitted without objection.

6.  EVIDENCE — ABSTRACT HYPOTHETICAL QUESTION.—A hypothetical question addressed to an expert witness which assumes the existence of a fact that the evidence does not tend to prove is too broad.

7.  APPEAL AND ERROR—SPECIFIC OBJECTION TO EVIDENCE.—Specific objection must be made at the time that there was no evidence tending to prove one of the facts assumed by a hypothetical question to an expert, and such objection comes too late on appeal for the first time.

8. APPEAL AND ERROR—ABANDONMENT OF GROUND OF MOTION FOR NEW TRIAL.—A ground of appellant's motion for new trial, not urged in his brief, will be treated as abandoned.

Appeal from Logan Circuit Court, Southern District; *James Cochran*, Judge; affirmed.

*Thos. S. Buzbee, Geo. B. Pugh* and *A. S. Buzbee,* for appellant.

1. It is apparent that appellant was guilty of no negligence, and a verdict should have been directed for defendant. It was the duty of the carrier to allow a reasonable time and opportunity to get on and off its trains and trains must stop at stations long enough for that purpose. A reasonable time is such time as a person of ordinary care and prudence should be allowed to take. It is the duty of the carrier in determining what is a reasonable time to take into consideration any special conditions peculiar to the passenger and the surroundings at the station and give a reasonable time under existing circumstances as they are known, or should be known, by the carrier's servants for a passenger to get on or off its trains. 105 Ark. 269; 101 *Id.* 183. The testimony is undisputed; shows that the carrier performed its whole duty, and there was no negligence nor liability. 117 Ark. 483; 101 *Id.* 532.

No negligence of the carrier was shown. No disability was shown in Mrs. Thurston, and in the absence of any notice of disability appellant owed no duty to her other than that allowed the ordinary passenger. 115 Ark. 505.

2. Under the authority of 115 Ark. 505, it was error to give instructions Nos. 8 and 9 for appellee, without also giving, at the same time, Nos. 3 and 4 requested by appellant. The condition and needs of a passenger must be made known to the carrier or its servants. 115 Ark. 505.

3. It was prejudicial error to admit the testimony of John A. Scott. It was hearsay and inadmissible. 78 Ark. 220; 114 *Id.* 56.

4. Hypothetical questions which were erroneous were permitted to be asked which were clearly prejudicial. 136 Ark. 83; 130 *Id*. 456.

*John P. Roberts* and *Evans & Evans,* for appellees.

1. Where an injury is caused by the operation of a railway train, a *prima facie* case is made against the company operating the train. 73 Ark. 548-53; 131 *Id*. 571.

2. It is the duty of a carrier to stop its trains long enough for passengers to get off and on its trains. A reasonable time must be allowed under all the circumstances of the case. It is the duty of the carrier to determine what is a reasonable time from the circumstances that are known, or should be known, to it. 128 Ark. 479; 73 *Id*. 548. A railroad must take notice of all things it should have taken notice of in the exercise of the highest degree of care due to passengers on its trains. Railroads are held to the highest degree of care reasonably consistent with their mode of conveyance and the practical operations of trains. 99 Ark. 365; 105 *Id*. 269. A carrier must give a reasonable time for passengers to alight. 2 Hutchinson on Carriers, § 1118.

3. There is no error in the instructions. They state the law correctly; nor was incompetent testimony admitted.

4. The testimony clearly showed that the injury to Mrs. Thurston by her fall hastened her death, and any injury which hastens death causes it within the meaning of the law. 50 Ark. 545; 1 Hale P. C. 428.

Where two concurring causes produce an injury which would not have resulted in the absence of either, the party responsible for either cause is liable for the consequent injury. 129 Ark. 520; 130 *Id*. 435.

WOOD, J. An action was brought by Henry Thurston, appellee, who was the husband of Dora Thurston, to recover judgment against the appellant for damages which he alleged he sustained by reason of the death of his wife. The appellee, among other things, alleged that

Mrs. Thurston was a passenger on appellant's train from Booneville, Logan County, Arkansas, to Waveland, Yell County, Arkansas; that the agents of appellant negligently failed to stop and hold the train at Waveland for a sufficient length of time to allow Mrs. Thurston to alight in safety; that they negligently failed to furnish her with the necessary assistance and means to enable her to safely debark from the train; that by reason of the acts of negligence alleged, Mrs. Thurston fell while endeavoring to alight from the train and received injuries which produced and hastened her death, to his damage in the sum of $3,000, for which he prayed judgment.

The appellee, Charles I. Evans, as administrator of the estate of Mrs. Thurston, instituted an action against the appellant to recover damages for the benefit of the children of Mrs. Thurston. The acts of negligence alleged in his complaint are the same as those set forth in the complaint of the appellee, Henry Thurston. Appellee Evans alleged damages also in the sum of $3,000, for which he asked judgment. The answers denied the allegations of negligence and damages and denied liability. The causes were consolidated for trial and were sent to a jury. The trial resulted in verdicts and judgments in favor of the appellees, from which is this appeal.

1. The appellant contends there was no evidence to sustain the allegations of negligence in the complaint. The facts on the issues are substantially as follows:

About July 1, 1919, Mrs. Thurston, in company with her little girl and carrying such baggage as she needed for a trip, boarded appellant's train at Booneville, Logan County, Arkansas, for appellant's station at Waveland, Yell County, Arkansas, a distance of about eighteen miles. Mrs. Thurston had been ill for some years with tuberculosis, though at that time she was better and was going on a visit to her mother for the benefit of her health. The train on which Mrs. Thurston took passage was about five hours late. It arrived at Waveland about two o'clock p. m.

A witness who lived at Waveland observed Mrs. Thurston attempting to get off the train after it had started. He was standing close to the steps and heard Mrs. Thurston holler and she kept hollering to let her off. Witness took hold of the little girl and set her off, and as she looked around Mrs. Thurston stepped off of the steps and got down and fell over on one leg and knee. She fell in an effort to get off of the train as it was starting. When witness heard Mrs. Thurston hollering after the train started, somebody began to flag the train. It did not stop until after Mrs. Thurston got in the waiting room. No one else got off there, and witness did not see any one get on. Neither the conductor, the porter, nor the brakeman were there. The train moved five or six feet before it stopped. It was barely moving when she stepped off. She got down on one leg and on both hands. Witness did not assist her at all. The train was barely moving when witness helped the little girl off. Witness did not get to Mrs. Thurston before she got up. Witness did not know whether Mrs. Thurston kicked the step box off or not, but it fell off.

Another witness saw Mrs. Thurston while she was waiting to take the train that day, and she looked like she had been sick. Another witness, who was on the train when it reached Waveland, stated that she heard the step box fall and looked around and saw Mrs. Thurston on one knee on both her hands on the ground. The train was then moving slowly. Mrs. Thurston got up and went to the station.

The conductor of the train testified that the first he saw of Mrs. Thurston was when she was right in front of the freight room, probably going into the waiting room. The porter had told him that some lady had fallen. He went back and asked her about getting off and asked her if she was hurt, and she stated that she was frightened more than anything else. This occurred in the waiting room. The witness looked after the unloading of passengers from the white passenger coach.

He did not see Mrs. Thurston attempting to get off. The train was a vestibule train. Witness had been off the train at the front end of the chair car. They had a porter and a brakeman that day. The brakeman was back three or four car lengths protecting the rear end of the train. After the passengers were unloaded and loaded, witness and porter and brakeman went up to the express car. They stayed there three or four minutes. The brakeman's duties required him to be back at the rear end of the train. When the witness took up the ticket from Mrs. Thurston, she did not say anything to witness about being sick, and she was sitting in a seat just like the rest of the passengers. Witness did not pay any attention to her.

Another witness on behalf of the appellant testified that he was the station agent at Waveland and that he remembered the time Mrs. Thurston came down there and got off the train while it was just moving up. He saw her in the waiting room—was there when the conductor asked her if she was hurt and she said she was not. Witness heard her say that she stepped off of the train and fell.

In *Barringer* v. *St. L., I. M. & S. Ry. Co.*, 73 Ark. 548, we said: "But the law is that it is the duty of carriers to allow their passengers a reasonable opportunity of getting on or off their trains, and they must stop at stations long enough for that purpose. A reasonable time is such time as a person of ordinary care and prudence, under the circumstances, should be allowed to take. It is the duty of the carrier, in determining what is a reasonable time, to take into consideration any special condition peculiar to any passenger, and to the surroundings at the station, and to give a reasonable time under the existing circumstances, as they are known, or should be known, by its servants, for a passenger to get on or off its train." *St. L., I. M. & S. Ry. Co.* v. *Trotter*, 101 Ark. 183; *St. L., I. M. & S. Ry. Co.* v. *Wright*, 105 Ark. 269; *St. L., I. M. & S. Ry. Co.* v. *Aydelott*, 128 Ark. 479-485.

Applying the above doctrine to the facts which the evidence above set forth tended to prove, it was clearly an issue for the jury to determine whether or not the servants of appellant were negligent in not allowing Mrs. Thurston sufficient time and rendering her the necessary assistance in debarking from appellant's train. The jury was warranted in finding that Mrs. Thurston and her little daughter were the only passengers who alighted from the train at Waveland station the day of the alleged injury, and that the conductor and his assistants — the porter and brakeman — knew, or should have known, this fact; that, when they were in the act of aligthing, the train was started and was moving slowly as they got off; that no step box was placed on the ground for their use; that, in her sick and feeble condition and with her little girl and their baggage, it was necessary that Mrs. Thurston have assistance to enable them to get off safely, and that appellant's agents were bound to have known such facts and were negligent in not furnishing her such assistance and in not holding the train a reasonable length of time, under the circumstances, for Mrs. Thurston to safely alight.

While there is no affirmative duty upon the part of a conductor, porter or brakeman to ascertain the physical condition of passengers, or other conditions and circumstances making it necessary to render them special assistance in debarking from the train, nevertheless, where the physical ailment of any passenger is such, or other conditions are such, that these train employees in the exercise of ordinary care in the discharge of their respective duties are bound to observe that they require assistance in getting safely on or off the trains, then it becomes the duty of such employees to render such assistance; and a failure to discharge such duty, resulting in injury to a passenger, is negligence, for which the carrier is liable in damages for such injury. In this case the jury might have found that Mrs. Thurston's very appearance indicated that she was seriously ill. Her only companion was her little girl, and she was incumbered with some bag-

gage. Under these circumstances, the porter and brake-
man and conductor, knowing that these were the only
passengers to be discharged at Waveland, in the exer-
cise of ordinary care in the discharge of their respective
duties, could and should have observed that Mrs. Thurs-
ton needed assistance to enable her to safely debark from
the train, and that it was necessary for the train to be
detained a sufficient length of time for that purpose. At
least, it was a question for the jury under the circum-
stances to say whether or not these employees were neg-
ligent in failing to discharge their duties to Mrs.
Thurston.

The instructions of the court on the issue as to
whether appellant was negligent as alleged in the com-
plaint were in conformity with the law as announced in
previous decisions of this court in regard to the duty
of carriers toward their passengers while getting on
and off trains. See *Barringer* v. *St. L., I. M. & S. Ry.
Co., supra; St. L., I. M. & S. Ry. Co.* v. *Hartung*, 95 Ark.
220. The doctrine announceed in *Weirling* v. *St. L., I. M.
& S. Ry. Co.*, 115 Ark. 505, is not applicable to the facts
of this record, because of the difference between the
facts of that case and those of the instant case. The court
did not err in refusing the instructions in which the ap-
pellant sought to have the doctrine of that case applied
to the facts of the present case.

2. Witness John Scott testified that he was at the
station on the day that Mrs. Thurston got hurt. He met
her right this side of the station. She said that she was
sick, or had been sick, and that she had fallen from the
train and hurt her knee and ankle, and that she was not
able to walk to her brother's house. The appellant ob-
jected to the above testimony and asked that the same
be excluded from the jury. The court overruled the ob-
jection and refused the request, to which the appellant
duly excepted.

The testimony was not in the nature of *res gestae*.
The remarks of Mrs. Thurston were not in the nature of
voluntary exclamations of pain resultant from the in-

jury she had received, but they were in the nature of a narrative of the fact that she was sick, that she had fallen and hurt her knee and ankle, and for that reason she was not able to walk to her brother's house. The court, therefore, erred in its ruling. *L. R. & H. S. W. Ry. Co.* v. *Cross,* 78 Ark. 220; *Prescott & North Ark. Ry. Co.* v. *Thomas,* 114 Ark. 56. But we can not agree with learned counsel for appellant that the error was prejudicial to appellant's defense. The undisputed testimony shows that Mrs. Thurston fell on her hands and knee. The appellant's conductor himself testified that the porter told him that some lady had fallen and that she was supposed to have dropped down on her knee in getting off of the train. Another one of appellant's witnesses testified that he heard Mrs. Thurston say that she stepped off of the train and fell.

Mrs. Thurston's brother, who was a witness for appellant, testified that when he drove up she told him that he had just come in time to save her life. "She was complaining of being sick, and while she was at his house she kept complaining of a hurting in her side. She stayed there all night. My sister said she started to get off the train, and the little girl went out ahead of her, and she just kicked the step box out and started to getting off and the train was moving slowly when she started to step off, but when she hit the ground she fell on one hand and on one knee."

Other witnesses on behalf of the appellee, and without objection on the part of the appellant, testified that Mrs. Thurston fell on her knee and both hands, and that she said she had been sick, and she looked like she had been sick.

The physician, who was called to attend Mrs. Thurston at her mother's just after the alleged injury from the fall, testified, without objection from appellant, that he found that she "was suffering from some kind of a shock—had a bruised place on one of her knees—looked very much like she had fallen on her knee."

In view of the testimony thus adduced by appellant itself and the undisputed testimony of the witnesses for the appellee showing that Mrs. Thurston was sick and that she had fallen on her knee and hands, it occurs to us that no possible prejudice could have resulted to appellant from the mere statement of Mrs. Thurston that she was sick and had fallen and hurt her knee and ankle. It will be observed that she did not say that her fall was caused by any negligence on the part of the servants of appellant and appears to have been only narrating the fact of her fall merely to show that she was unable to walk to her brother's house. This statement was but a recital of facts which had been established by the undisputed evidence and to which appellant had before offered no objection.

3. Counsel for appellee asked several physicians—experts—substantially the following question: "If she received an injury to her left side and a shock to her knee and body by falling on the ground, and she was at that time suffering from tuberculosis and afterward was continuously confined to her bed until she died, what is your opinion as to whether or not that injury hastened her death?" Counsel for the appellant objected to the question. The court overruled the objection, and it is now contended that the court erred for the reason that the hypothetical question included an assumption of the fact that Mrs. Thurston in the fall had received an injury to her left side and body when there was no testimony to justify such assumption.

The court excluded from the jury what Mrs. Thurston said with reference to her side hurting her, but the doctor was allowed to testify without objection that she appeared to be suffering from a shock. There is no testimony that her side was injured by the fall, and no testimony that any part of her body was injured except her knee and ankle. The hypothetical question was, therefore, too broad because it assumed the existence of facts that the evidence did not tend to prove. The question was defective. Taylor v. McClintock, 87 Ark. 243-

294; *Bell* v. *State,* 120 Ark. 535-551-2; *Kelley* v. *State,* 146 Ark. 509. However, there was evidence tending to establish some of the facts assumed in the hypothetical question. It was the duty of the counsel, if he desired to have eliminated the particular fact which he now claims there was no evidence to sustain, to have called the court's attention to it by specific objection to such fact. See *Bell* v. *State, supra; Powell* v. *State,* 74 Ark. 355; *Missouri & North Ark. Ry. Co.* v. *Daniels,* 98 Ark. 352-359-360. The specific objection which the appellant now makes to the hypothetical question for the first time can not avail it.

4. The appellant contends in the last place that there is no evidence that Mrs. Thurston's death was in any way hastened by the injuries alleged to have been sustained. The answers to the hypothetical questions propounded to the several experts show that this contention is not tenable. The experts gave it as their opinion, assuming the existence of facts as stated in the hypothetical questions, that Mrs. Thurston's death was hastened by her fall from the train.

Learned counsel for appellant do not urge by way of argument in their brief that the judgments are excessive, and we therefore treat that ground of its motion for a new trial as abandoned.

The judgments are correct, and they are affirmed.