OPINION OF THE COURT
Eve Preminger, J.
A court will not ordinarily permit a defendant to introduce *536 evidence of a third party’s good character in the hope of impressing the jury with the virtue of his own. Defendant, accused of robbing and assaulting a police officer, nevertheless seeks to adduce evidence of the good reputation of his deceased brother, shot and killed by the same policeman.
The events giving rise to the instant application took place on June 12, 1985 in a little frequented stretch of Morningside Avenue bordering Morningside Park. That evening a young police officer in plain clothes giving the appearance of an undergraduate student from nearby Columbia University was checking on the integrity of cars parked along the avenue. According to the officer, he had progressed as far as 113th Street when he was attacked without warning. He stated that a swift flurry of punches sent him reeling. As fingers fumbled through his empty pockets, a voice demanded that he "give it up” and he became aware that he was faced with two foes, each considerably larger than he. Still partially stunned, he stated that he pulled out his shield to identify himself as a policeman, at which point the blows intensified. Forced to the ground he reached in his sock for his revolver and fired several shots, mortally wounding an individual later identified as Edmund P. The second individual, whose face was not clearly seen by the officer, vanished into Morningside Park.
The police immediately began seeking the second assailant. Although there were a few witnesses who had heard or seen some of what had transpired that evening, a description of the man who had disappeared was not forthcoming. After some investigation the suspicions of the police lit upon the brother of the deceased, who was charged with attempted robbery and assault.
At trial, it was revealed that the case against defendant rested upon the testimony of two witnesses who claimed to have heard the defendant admit his involvement in the alleged attack. The remainder of the evidence against the defendant was negligible. It was defendant’s contention that these witnesses were pawns of the police who were framing defendant in an attempt to justify the killing of his innocent brother by the police officer.
Even before testimony began the few jurors who were unfamiliar with the case as extensively reported in the press learned that the defendant and his brother were an unlikely pair to have been implicated in such a crime. Not only did both lack criminal records but each had attended a prestigious *537 preparatory school prior to admission to college. The defendant was, at the time of trial, an engineering major at an Ivy League university and defendant’s brother had been awarded a scholarship to attend another highly regarded university.
In addition to this information, defendant sought to introduce character testimony, not with respect to himself, but concerning the good reputation of his deceased brother.
A resolution of this application requires a review of the nature and uses of character evidence.
Character testimony has long been perceived as an unmanageable and unruly body of law. The Supreme Court has derided it as "archaic, paradoxical and full of compromises and compensations by which an irrational advantage to one side is offset by a poorly reasoned counterprivilege to the other” (Michelson v United States, 335 US 469, 486 [1948]). New York has joined in this critical view and suggested reliance on the Trial Judge’s "discretionary controls” to curb abuses (see, People v Alamo, 23 NY2d 630, 634).
Initially, and for reasons which are now obscure (1A Wig-more, Evidence § 54.1 [Tillers ed 1983]), courts rejected the introduction of character testimony of any type, especially in civil cases. Even in criminal cases, until the beginning of the 19th century, the defendant was barred from presenting evidence of his good character in all but capital cases (McNally, Evidence, at 320 [1802]; Commonwealth v Hardy, 2 Mass 303, 317 [1807]; and see, Cancemi v People, 16 NY 501 [1858]). The next extension was somewhat unusual. Character evidence became admissible in cases which were considered closely balanced, or difficult to decide. As Lord Ellenborough explained: "If you do not know which way to decide, character should have an effect; but it is otherwise in cases which are clear. If it could be permitted to operate where a crime is clearly proved, it would always be brought forward; because there is hardly anyone who has not at some time maintained a good character * * * If the evidence were in even balance, character should make it preponderate in favor of a defendant; but in order to let character have its operation the case must be reduced to that situation.” (Davidson’s Trial, 31 How St Tr 99, 216 [KB 1808].)
It may be that Judges in those days could more easily discern a close case than is possible today. In any event the law has changed markedly from the days when Lord Ellenborough pronounced it. Although evidence of the good or bad *538 character of a party to a civil action is still not admissible when offered as a basis for inferring conduct (Beach v Richtmyer, 275 App Div 466), a defendant in a criminal case has an unqualified right, whether or not he takes the stand, to prove his good character in order to raise an inference that he did not commit the crime charged (People v Van Gaasbeck, 189 NY 408; People v McDowell, 9 NY2d 12). Character evidence is recognized as sufficiently relevant and probative of conduct that when weighed in conjunction with other evidence in the case, it may create reasonable doubt where none existed before (People v Trimarchi, 231 NY 263; People v Bouten, 50 NY2d 130; 1 Underhill, Criminal Evidence §§ 192, 196 [6th ed 1973]).
A remaining, but unexamined, catechism in the lore of character evidence is that evidence of the good (or bad) character of third parties is not admissible, even in criminal cases. (McElroy v Phink, 97 Tex 147, 76 SW 753 [1903]; People v Wilson, 136 Mich 298, 99 NW 6 [1904]; Kelley v State, 146 Ark 509, 226 SW 137 [1920], et al.)
Since such a rule is not based on relevance, logic and necessity have created exceptions to it. For example, in homicide prosecution where justification is an issue, the victim’s reputation for violence, if known to the defendant, is admissible. (Thomas v People, 67 NY 218 [1876]; People v Webster, 139 NY 73 [1893]; People v Gallagher, 75 App Div 39 [1902].) Also, in certain circumstances, the prior sexual conduct of a victim is admissible in prosecutions for sexual assault (People v Brehm, 218 App Div 266 [1926]). This rule has been codified in CPL 60.42.
These exceptions are a recognition that in some instances evidence of certain character traits may be highly relevant and should not be excluded merely because such evidence bears the tarnished label of character evidence.
Is evidence of the character of a defendant’s crime partner similarly relevant? Most cases dealing with this question have involved attempts to prove the bad character of an individual in order to prove the criminality of an accomplice, coconspirator or associate. (State v Fong, 211 Ore 1, 314 P2d 243 [1957]; State v Sharich, 297 Minn 19, 209 NW2d 907 [1973]; United States v Romo, 669 F2d 285 [5th Cir 1982].) The courts have properly excluded such evidence because a "defendant’s guilt may not be proven by showing that he has associates with unsavory characters.” (United States v Singleterry, 646 F2d 1014, 1018 [5th Cir 1981].) *539 But what of the inverse situation where the defendant wishes the jury to infer that he would not be likely to commit the crime from the fact that an associate has a good reputation? Guilt-by-association is not a problem in this type of case. Should, then, the same prohibition apply?
In the ordinary situation it should. The inferential leap sought to be made by evidence of this type (A is of good character, therefore B, the defendant, his accomplice, is probably innocent) is overly remote and tenuous. See, Schultz v State (133 Wis 215, 113 NW 428 [1907]), where two individuals were charged separately with conspiring with one another to bribe a third person. Although recognizing that the argument for admissibility was not without force, the court held that evidence of the good reputation of the conspirator not on trial was properly excluded in the trial of the other as too collateral to the issue.
In the general case, it is most likely that we will be able to infer little about the innocence of a defendant from the good character of his associates because the inference we may safely draw is little more than "A is of good character, therefore B, his associate, must also be of good character and thus B is not guilty”. This conclusion, similar to the adage that it is possible to discern the character of an individual from the reputation of the company he keeps, is too slender a thread upon which to base reasonable doubt as to the guilt of B. Many a guilty party will associate with people of sterling reputation as well as with those whose reputations are questionable. In general, proof of the reputation of a defendant’s associate is too collateral to justify exploration at the trial of that defendant.
When B is not merely an associate of A, but is a codefendant, coconspirator or accomplice, the argument for admission is somewhat stronger, but still insufficient. A jury could still find that although evidence of A’s reputation, when considered with all of the other evidence, raises a reasonable doubt as to the guilt of A, it will not do so as to the defendant. One can logically envision a scenario in which A was improperly charged with a crime, but B was not. Perhaps A was mistakenly identified, or was innocently present at the crime. Similarly, where A’s participation is open to debate, or where he offers a defense such as justification, evidence of A’s good character will often redound to his benefit without creating an inference as to B.
*540 This is not the situation in the instant case. Unlike the analysis given above, the inference that this defendant would have the jury draw from the fact of his brother’s good character is not that this defendant has a good character as well and is, therefore, not guilty. Here the inference sought is the more direct one that defendant’s brother’s good character raises a doubt about his brother’s guilt. If his brother is not guilty, the People’s version of the incident as related by the police officer is false. In other words, in the instant situation, if the defendant’s brother is not guilty, there is no credible evidence against the defendant himself. The last inference (innocence) is of course the same, but the inferential leap to be made is much more direct. Here the People’s accusations against this defendant stand or fall on the officer’s account, which must be false if the defendant’s brother is not guilty.
It is, therefore, clear that in the ordinary situation, proof of the good character of a defendant’s associate, codefendant, or coconspirator is not sufficiently directly related to defendant’s guilt or nonguilt to be admissible. On the other hand, in the instant case, the nonguilt of defendant’s associate is directly probative of the defendant’s own guilt. Since one could not be guilty if the other were not, there is no lack of probative connection. Here the evidence of the third party’s character is no less relevant and probative than is that of the defendant’s.
The rules of relevance stem from the laws of logic. Evidence is relevant if it "make[s] the existence of any fact * * * of consequence to the * * * action more probable or less probable than it would be without the evidence” (NY Law Rev Commn, Proposed Code of Evidence for State of New York § 401 [1982]). No more and no less is necessary to make evidence admissible. Unthinking application of formal rules about character evidence has not proved effective in the past and should not be adhered to in the present. Accordingly, defendant’s application is granted.