## ARNOTT v. STATE.

### Opinion delivered October 6, 1913. ·

1. INSTRUCTIONS—REVIEW OF THE EVIDENCE.—In giving instructions to the jury, it is not necessary that a single instruction cover all the elements in the evidence; all the instructions are to be read and construed as a whole, and are entitled to a reasonable interpretation. (Page 382.)

2. HOMICIDE — INSTRUCTIONS — SELF-DEFENSE. — Where defendant is charged with murder, two instructions are proper, which, when

read together tell the jury that defendant can not provoke deceased to strike him, and then without making any effort to abandon the difficulty, shoot the deceased while his own life was not in danger, and avail himself of the plea of self-defense. (Page 382.)

3. EVIDENCE—CREDIBILITY OF WITNESSES—PROVINCE OF JURY—INSTRUCTIONS.—The trial court may not instruct the jury as to the credit they should give the witnesses; but the court may tell the jury that it will be their duty to reconcile any conflict which they may find in the testimony so as to give credit to the whole of it, but if they can not they may credit the whole or any part of a witness' testimony, as the same shall impress their minds as being true; and in determining the truth or falsity of a witness's testimony, they may consider it with reference to all the other testimony given in the case, and that, too, whether the other testimony is contradictory or not. (Page 384.)

Appeal from Hempstead Circuit Court; *J. M. Carter,* Judge; affirmed.

### STATEMENT BY THE COURT.

The defendant, Sam Arnott, was indicted by the grand jury of Clark County for murder in the first degree, charged to have been committed by shooting I. Y. Nash. A change of venue was taken to Hempstead County, and the defendant was convicted of manslaughter, his punishment being fixed at two years in the State penitentiary. From the judgment of conviction he duly prosecuted an appeal to this court.

The facts developed by the witnesses for the State are substantially as follows: The deceased, Nash, was marshal of the town of Gurdon, in Clark County, and the defendant, Arnott, was a deputy constable. About 10 o'clock in the night time in February, 1912, Nash and Arnott were seen standing on the sidewalk between the hotel and the Clark County Bank, in the town of Gurdon. They were facing each other, about one or two feet apart. Two pistol shots were fired while the parties were standing up, and a third one was fired as the parties clenched and fell in the scuffle. The shots were fired by Arnott, and two of them took effect in the body of Nash. One of the bullets took effect under the edge of the ribs on the left side, and the other entered Nash's

right breast and went straight into his body. This was the shot that caused his death. Some of the witnesses for the State testified that they did not see any licks passed and that Nash made no effort whatever to strike the defendant. Another witness for the State said that the parties commenced quarreling and that in a short time the defendant, Arnott, applied a vile epithet to Nash; that Nash then slapped Arnott a pretty hard lick on the head; that Arnott then ran backwards and repeated the same epithet; that he drew his pistol and shot Nash twice; that after the second shot was fired by Arnott, Nash grabbed him, and they both fell down on the sidewalk about the time the third shot was fired; that they did not see any pistol in Nash's hand and did not discover any when they went to the parties after they fell; that Arnott's pistol was about three or four feet from Nash's body when he fired the first shot. One of the witnesses for the State said that Nash remarked when he came up: "Doctor, he has killed me;" and that the defendant said: "I will kill that God-damned fellow." Several hours after the difficulty, on the same night, Nash died.

The defendant, Sam Arnott, testified for himself: At the time Nash was killed I was acting as deputy constable. Previous to that time Nash had threatened to kill me if I did not quit my work. On the night of the difficulty Nash met me and again told me to stay off of the streets. I replied that I had to work for a living and that I was not interfering with his business. Nash pulled my coat back, grabbed my star, and threw his gun on me. He abused me and applied all sorts of vile epithets to me; then a man came along and took hold of Nash and spoke a few words to him in a low tone of voice. I started to go home and Nash again overtook me and threatened to knock my brains out if I did not stay off the street. I turned to go home, and when I got pretty near to the division wall between the hotel and the bank I heard some one running behind me on tiptoes. I looked around, and just about that time Nash hit me

over the head with something, and I fell on an iron rod attached to the building, and my jaw struck the iron. I called for help, and Nash then kicked me in the breast with the heel of his shoe and said: "Shut up, you son-of-a-bitch; I will finish you while I have got you down." He jumped down on me, tore my button holes out, and grabbed me by the throat. He then commenced beating me over the head with his gun. He knocked two jaw teeth out and one loose and made two big knots on my head. When I fell I had my hand in my overcoat pocket and I drew my pistol and shot him. He did not turn my throat loose until after the second shot. I was choked nearly to death. Nash weighed 220 or 225 pounds. I weighed only 137 pounds and not very stout.

Other witnesses for the defendant testified that Nash had previously made threats against him, and that soon after the difficulty in question they saw blood on the side of the defendant's face and a bruise on his eye and neck.

In rebuttal, witnesses for the State testified that they did not see any blood or bruises on him.

*C. C. Hamby,* for appellant.

*Wm. L. Moose,* Attorney General, and *Jno. P. Streepey,* Assistant, for appellee.

Hart, J., (after stating the facts). It is first contended by counsel for defendant that the court erred in giving instruction No. 9 at the request of the State. It is as follows:

"If you find from the evidence in this case beyond a reasonable doubt that the defendant, Sam Arnott, while in a dispute with the deceased, by violent and insulting language provoked the deceased to slap him in the face, and you further believe beyond a reasonable doubt that at the time he so used said language toward the deceased that he intended to provoke an assault to be made upon him by the deceased for the purpose of having an opportunity of shooting and killing deceased, and if you further find that when said language was used, the deceased slapped the defendant in the face and that

he then drew his pistol and shot the deceased, then you are told that the defendant is not entitled to any benefit under his plea of self-defense."

Counsel for defendant claim that the instruction should not have been given because it eliminates and leaves out all of the difficulty between the parties immediately before the shooting occurred; but we can not agree with them in this contention. It is not practicable that a judge should attempt to so frame each paragraph of his charge to the jury as to make it cover all the elements of the evidence, and it is not necessary that he should do so. The instructions are to be read and construed as a whole and are entitled to a reasonable interpretation. It was the theory of the defendant that the deceased began the difficulty and was the aggressor; that the defendant tried to avoid the difficulty but was followed by the deceased, who struck defendant and knocked him down and began to choke and beat him, and that the defendant, in order to save his own life, shot the deceased. This theory of the case was fully presented to the jury in instructions given at the request of counsel for defendant. In the case of *Ferguson* v. *State,* 95 Ark. 428, the court held:

"One who has provoked an attack upon himself can not be excused for killing his assailant in order to save his own life or to prevent great bodily injury until he has in good faith withdrawn from the combat as far as he can and done all in his power to avoid the danger and avert the necessity of the killing."

It can not be said that the instruction complained of is in violation of the principle of law just quoted because, just following it, the court read to the jury instruction No. 10, which is as follows:

"If you find from the evidence beyond a reasonable doubt that at the time the defendant first assaulted and shot the deceased with a pistol the deceased was making no hostile demonstrations toward the defendant which placed him in danger of losing his life or receiving great bodily harm at the hands of deceased, then you are told

that the defendant is not justified in killing deceased, and it will be your duty to convict him.''

It will be noted that in these two instructions the court in effect told the jury that if defendant provoked an assault upon himself by the deceased for the purpose of having an opportunity of shooting and killing him, and the defendant, after deceased had slapped him, immediately drew his pistol and killed the deceased while the latter was making no hostile demonstration toward him, the defendant would not be justified in the killing. In other words, the two instructions in effect told the jury that the defendant could not provoke the deceased to strike him and then, without making any effort to abandon the difficulty, shoot the deceased while his own life was in no danger.

At the request of the State the court also gave instructions Nos. 13 and 14, which are as follows:

''No. 13. The court tells the jury that nowhere in these instructions does the court mean that you are to arbitrarily disregard the testimony given by any witness in this case. That is a matter solely with the jury, and it is not in the province of the court to tell the jury what weight should be given by you to the testimony of any witness.''

''No. 14. You are instructed that you are the sole judges of the weight of the evidence and the credibility of the witness, and, in passing upon the weight to be given to the testimony of any witness, you may take into consideration his manner of testifying while on the witness stand, any bias or prejudice that may be shown, the reasonableness or unreasonableness of the statements of any witness, the interest of any witness in the result of the verdict, any conflicts or contradictions in the statements of any witness while testifying on the stand, as well as any conflicts or contradictions in the testimony of one witness with the testimony of other witnesses, and in applying these tests you will take into consideration your knowledge of men and affairs.''

It is contended by counsel for defendant that in-

struction No. 14 is a charge upon the weight of the evidence; but we do not think so.   Of course, it is well settled that the court may not instruct the jury as to the credit they should give to the witnesses; but the court may tell them that it will be their duty to reconcile any conflict which they may find in the testimony so as to give credit to the whole of it, but, if they can not, they may credit the whole or any part of a witness' testimony accordingly as the testimony of such witness shall impress their minds as being true, and in determining the truth or falsity of a witness' testimony they may consider it with reference to all the other testimony given in the case, and that, too, whether the other testimony is contradictory or not.

It is again contended by counsel for defendant that the court erred in refusing to give the instruction No. 5 asked by the defendant.   We do not deem it necessary to set out this instruction.   It is sufficient to say that the matters embraced in it were fully covered by other instructions given at the request of the defendant.   We have examined the instructions carefully and think that the respective theories of the State and of the defendant were fully covered by the instructions given by the court, and, finding no prejudicial error in the record, the judgment will be affirmed.