ST. LOUIS, IRON MOUNTAIN & SOUTHERN RAILWAY COMPANY
*v.* DeLAMBERT.

Opinion delivered July 12, 1915.

1. APPEAL AND ERROR—FORMER APPEAL.—The determination of law on a former appeal, becomes the law of the case in all further proceedings.

2. MASTER AND SERVANT—INJURY TO SERVANT—DIRECTIONS AS TO REPAIR. —Plaintiff was directed to repair a railroad motor car, and it was necessary to test the car thereafter on the tracks, *held*, the directions did not authorize the plaintiff to violate another rule of the railroad company, prohibiting testing at night.

3. MASTER AND SERVANT—INJURIES TO SERVANT—CONTRIBUTORY NEGLIGENCE.—Plaintiff, an employee of defendant railway company, was ordered to repair a railroad motor car, *held*, where he knew that the tracks of defendant company were frequently used by hand cars, the fact that he had to test the car to be repaired, upon the tracks, would not free him from contributory negligence, when he undertook to do the same at night.

4. MASTER AND SERVANT—INJURY TO SERVANT—LIABILITY—INSTRUCTIONS. —In a personal injury action, where the evidence was conflicting as to whether the servant was acting for the master or for himself, when he was injured, it is error to refuse to charge the jury that the master was not liable unless they found that the servant was acting under his orders and directions.

5. MASTER AND SERVANT—INJURY TO SERVANT—SUFFICIENCY OF EVIDENCE. When the servant of defendant railroad was injured by a collision between the motor car which he was testing on the tracks, and a hand car, the evidence held insufficient to show negligence on the part of defendant in ordering plaintiff to test the car on the tracks or in permitting the hand car to be there.

Appeal from Bradley Circuit Court; *Turner Butler,* Judge; reversed.

*E. B. Kinsworthy, James C. Knox* and *T. D. Crawford,* for appellant.

1. The modification of instruction 14 was material and prejudicial. The testimony shows that appellee was

notified that the master mechanic had forbidden the taking of the cars out on the track at night, and that the penalty for disobedience would be dismissal from the service. The jury could reasonably have found from the evidence that the company's rules forbade plaintiff from taking the car out at night for "joy-riding," or otherwise, and that he was not directed by any superior officer to take it out on this occasion. Yet this modification allowed a recovery if it appeared to *plaintiff* reasonably necessary to run the car on the track, etc., giving him the right to run the car on the track to test it, if it appeared necessary to *him*, regardless of the rules forbidding it.

If, in taking the car out at night for a ride, plaintiff was violating a rule of the company, he was not in the line of his duty, and the master was not responsible for his safety, nor required to anticipate that he would place himself in a position of danger by violating its rule.   115 Ark. 350.

2.   Under the evidence, there can be no question but that appellee knew of the danger of going out on the track at this time, and the court erred in refusing to instruct the jury, as a matter of law, that he assumed the risk, unless they should find that he was instructed by his superior officers to make the trip, and that they knew, or he advised them, at the time, of the danger of the trip, and they still insisted that he make it.   220 U. S. 590; 35 Ark. 602; 113 Ga. 1067; 189 Ill. 123; 115 Ind. 566; 57 Neb. 138; 49 Neb. 649; 7 Houst. (Del.) 557; 3 Labatt, Master & Servant, § 1188.

3.   Appellant's own negligence was the proximate and immediate cause of his injury.   He was not acting in the line of his duty, no one told him to take the car out at night or at any time to test it, and he knew he was violating the company's rules in doing so.   Instruction 19 requested by appellant should have been given.

*Jones & Owens* and *J. R. Wilson,* for appellee.

1.   There was no error in modifying the fourteenth instruction.   Appellee was carrying out the orders of the master mechanic to fix the car, when he was injured.

There was no evidence of a rule against testing cars out on the tracks, but it was the usual method to do so according to the testimony, at least, at McGehee. He had been permitted to try out cars in this manner, and was never directed or advised to stay in the shop.

2.   There was no testimony in the record to make an instruction on assumed risk applicable. Appellee was doing his work in the usual way, and on the track pointed out by the appellant. He will not be held to have assumed any risk arising from the negligence of the master. 90 Ark. 223; 87 Ark. 321; 88 Ark. 181; 95 Ark. 291; 109 Ark. 295; 110 Ark. 247; *Id.* 463.

3.   The nineteenth instruction requested by appellant was covered by other instructions given, and the court was not required to repeat.

McCULLOCH, C. J.   The plaintiff was an employee of the defendant railway company and instituted this action to recover damages on account of personal injuries received. The case was here once before, and the judgment was reversed on account of the insufficiency of the evidence. 112 Ark. 446. The facts set forth in the former opinion need not be repeated here in detail.

There are slight differences in the testimony which will be referred to later in the discussion of the merits of the case. Suffice it to say, now, that the plaintiff was employed as a mechanic, his particular service being to repair motor cars or speeders and such like at McGehee, and the evidence tends to show that during the process of repairs it was necessary to take those appliances out on the track to try them out. He repaired a motor car on Sunday and that night went out on the track to try it out, and collided with a hand car a few miles south of McGehee. He was knocked off the track and severely injured. The hand car was being used in bringing a crowd of ball players from Arkansas City. It did not belong to the railroad company, but to a Government engineer who was working for a levee district at Arkansas City. The car was taken out without the knowledge or consent of any of the railroad employees. The evidence showed that hand cars and speeders were frequently used by employees of

the company, and also by third parties. The evidence adduced by the defendant shows, however, that there was a positive rule against the use of hand cars, either by strangers or by employees other than section men, without a special permit signed by the general superintendent at Little Rock.

(1)    In the opinion of the former case, we laid down the law to be that "there is no liability if there was no negligence in the operation of the car, or if the car was operated without the knowledge or consent of the company's servant." Further on in the opinion, we said that in order to make the company liable for the negligence of those operating the hand car, "authority to operate the car must be shown, either by proof that they were servants of the company, or were authorized to operate the hand car, or that there existed a custom of such a general nature as was sufficient to extend the privilege of operating hand cars to every person who might see fit to do so." Those expressions became, of course, the law of the case in all further proceedings.

There are numerous assignments of error with respect to giving and refusing instructions, and it is also insisted that there is not sufficient evidence to sustain the verdict imposing a liability on the railway company. We will only set forth such instructions as we deem it necessary to discuss.

(2)    Instruction No. 14, as requested by the defendant, was refused. The court gave it with a modification shown below in italics:

"14.    Although you might believe from the evidence that the plaintiff was employed by the defendant, and that his duty was to repair motor cars and motor trucks, and that in the performance of his duty it was necessary to take them out on the track for the purpose of testing them, yet, if you further find from the evidence that it was against the rules of the company to take them upon the track or operate them thereon in the night time, and that plaintiff was operating the same in the violation of the rules, then you are instructed that this is negligence on his part which will bar recovery in this action, provided

you believe such negligence was equal to or greater than that of the persons operating the hand car, *unless you further find from the evidence that he was specially directed by his superior officer or officers to repair the motor car, and that it appeared reasonably necessary to run the car on the railway track to test the sufficiency of the repair."*

The case was presented by counsel for plaintiff below on the theory that the Employers' Liability Act of 1911 controlled, and this instruction, as requested by defendant's counsel, was framed upon that theory. In view of the conclusions we have reached, which dispose of the case, we do not deem it necessary to discuss the question whether the case comes within the terms of the act of 1911, and we refrain from a decision on that point. The effect of that statute is fully discussed in the recent cases of *St. Louis, I. M. & S. Ry. Co.* v. *Ingram,* 118 Ark. 377, 176 S. W. 692, and *St. Louis, I. M. & S. Ry. Co.* v. *Wiseman,* 119 Ark. 477.

It is insisted that the modification of instruction No. 14 is erroneous because, for one reason, it ignores evidence which tends to show that there was a rule against the operation of speeders or motor cars at night. It is true that the language of the modification ignores any question in the case about such a rule, for it told the jury, in effect, that the plaintiff was entitled to recover if he was directed by his superiors to repair the car, and it was reasonably necessary to operate it on the railway track to test out the repairs. If there was in fact a rule of the company, known to the employee, to the effect that the testing out should not be done at night, then he had no right to violate the rule merely because he was instructed to repair the motor car. Instructions to repair would not imply a direction to violate the rule. We do not, however, find any evidence in the record that there was a rule against making these tests at night. There was a rule against using cars at all, and something is said therein about the dangers of taking such trips as "joy rides" on Sundays and at night, but we do not find any rule against doing work of this kind, that is to say, testing motor cars

under repair, at night and confining such operations to day time.

We do think, however, that the language of the modification is erroneous for the reason that its effect was to tell the jury that notwithstanding the dangers of going on the track with such a vehicle at night, the plaintiff was not guilty of contributory negligence merely because his superior officer had told him to repair the motor car, and it was necessary to test out the repair. There is a sharp conflict in the testimony, and the evidence adduced by the defendant shows that plaintiff was not directed to test the car on the track at all, and that it was unnecessary for him to do so. In fact, that testimony tends to show that the plaintiff was not testing the car, but was out for a pleasure ride, and had several companions with him. The purpose of instruction No. 14, as requested by defendant's counsel, was to submit the question of contributory negligence, and it was error to tell the jury that the plaintiff was not guilty of contributory negligence merely because he was directed by his superior officer to repair the car, and that "it appeared reasonably necessary to run the car on the railway track to test the sufficiency of the repair." Even if the jury found that plaintiff's superior had told him to repair the car, and that it was necessary to test it out on the track, still it was a question for the determination of the jury whether or not it constituted contributory negligence for him to attempt to make the test on a track at night where hand cars were likely to be running up and down the road. Plaintiff himself testified that it was quite a common occurrence for hand cars to be operated up and down that track. In fact, his testimony is as strong or stronger than any other testimony, which he attempted to adduce concerning the frequent use of hand cars, and the jury might have found from his own testimony that he was guilty of contributory negligence in going on the track at night.

(4)    We think, also, that the court erred in refusing to give instruction No. 19, requested by the defendant. It reads as follows:

"19.    Unless you find from a preponderance of the evidence that at the time of the injury, plaintiff was acting in the line of his duty, and under orders and direction of his superior officers, then you are instructed that his presence on the tracks was such negligence as would bar recovery in this action."

That instruction attempted to submit an issue about which the testimony was sharply conflicting.    Plaintiff testified that his superior, one Reed, gave him specific directions to repair the car and test it out.    Reed, however, positively denied that and stated that he gave no such direction, and, as before stated, considerable testimony was adduced by the defendant to show that the plaintiff was out with the car that night on a pleasure ride with his companions.    Defendant was entitled to an instruction directly submitting the issue whether or not the plaintiff was acting in the line of his duty and under the orders of his superior.

(5)    Without discussing any other features of the court's charge, it is sufficient to say that the error with respect to those two instructions calls for a reversal of the case.    But we are further of the opinion that the evidence, as strengthened on one issue in the trial below is still insufficient to support the verdict; and, inasmuch as the case has been fully developed, no useful purpose would be served by remanding it for a new trial.    We do not think that the testimony, giving it its strongest probative force in favor of plaintiff's side of the controversy, is sufficient to show that the hand car was operated with the knowledge or consent of the company's servants, or that "there existed a custom of such a general nature as was sufficient to extend the privilege of operating hand cars to every person who might see fit to do so."    The testimony of the witnesses introduced by the plaintiff shows that hand cars and speeders had been very frequently used by employees and strangers, but the undisputed evidence is that there was a constant effort on the part of the officers of the company to prevent violations of the rule.    There had always been a rule against such use of the tracks, but, frequent violations having been ob-

served, the rule was promulgated again about a year before the plaintiff's injury occurred, and the undisputed evidence shows a stringent effort on the part of the officials to enforce it. Plaintiff introduced a number of employees, section men, who testified concerning the frequent violation of the rules, but their own testimony shows that it was done with consciousness of the fact that the rules were being violated, and with an attempt to hide those infractious from superior officials. The section foremen were instructed to use every effort to prevent hand cars from being taken out and used, and they testified that they made such efforts, though sometimes they yielded to the importunities of friends and acquaintances and allowed hand cars to be used. Oftentimes the cars were taken out without their knowledge by persons who were not employees of the company. The proof shows that there were very frequent violations of the rule, but the undisputed evidence shows, as before stated, that there was a constant and unrelaxed effort on the part of the company to enforce its rule.

The evidence shows beyond any question that this car was not owned or operated by the railroad company, and that it was operated without the knowledge or consent of any one authorized to act for the company.

There is an attempt on the part of the plaintiff to prove that this hand car was one which belonged to the company, but we think that proof is without much, if any, force. The witness stated in rebuttal that he recognized the car as an "Iron Mountain car," but his identification is far from convincing. He knew nothing about the history of the car, nor where it came from, except that he saw it afterward and recognized it as an Iron Mountain car. Now, the evidence shows, on the other hand, the ownership of the car and the method by which it was obtained for use on that particular occasion. Not only that, but the evidence shows that after the injury occurred, the car was taken up to McGehee and afterward returned to the levee board for whom the Government engineer was at work. We therefore treat it as undisputed that the hand car was not one that belonged to the company, nor

was it in charge of any of the company's servants, nor was it used with the knowledge or consent of any of the company's servants. But even if we treat the testimony of the witness referred to as having some force in establishing the fact that the car was in fact one which belonged to the company, the evidence is still undisputed that no servant of the company was in charge of the car, or had authorized its used. It was used by third parties merely for the accommodation of the members of a baseball club, and was in no sense used on the business of the company.

Judgment reversed and cause dismissed.