FISHER *v*. STATE.

Opinion delivered May 30, 1921.

1. HOMICIDE—JUSTIFICATION—ILLICIT RELATIONS OF DECEASED WITH DEFENDANT'S WIFE.—In a prosecution for murder, it was proper to refuse a requested instruction that defendant was entitled to prove that illicit relations existed between deceased and defendant's wife as exculpating the defendant or in mitigation of the punishment, as that fact did not justify or excuse the homicide.

2. WITNESSES—COMMUNICATIONS TO PROSECUTING ATTORNEY—PRIVILEGE.—In a murder trial, testimony of the prosecuting attorney that, prior to the killing, defendant consulted him as to a crimi-

nal prosecution against deceased for illicit relations with defendant's wife, and that witness informed defendant that he did not have sufficient evidence, was not privileged, as the witness was consulted as the public prosecutor, and no confidential relationship existed between them.

3.  HOMICIDE—EVIDENCE—GOOD CHARACTER OF DECEASED.—In a prosecution for murder, evidence on behalf of the State that deceased was a peaceable and law-abiding citizen is not admissible unless defendant undertakes to attack the character of deceased.

4.  HOMICIDE—EVIDENCE—CHARACTER OF DECEASED.—In a prosecution for murder, evidence on behalf of defendant that on several occasions, when visiting defendant's wife in the night time, deceased borrowed a pistol to take along with him, is not an attack on deceased's character for peace and quietude, and does not render admissible evidence on behalf of the prosecution as to deceased's character in that respect.

Appeal from Cross Circuit Court; *R. E. L. Johnson,* Judge; reversed.

*Killough, Lines & Killough,* for appellant.

1.  The court erred in refusing instruction No. 1 offered by defendant.

2.  It was reversible error to permit the testimony of Judge H. T. Mitchell and W. A. Weaver as to the reputation of deceased as a peaceable, law-abiding citizen to go to the jury, as the character of deceased had not been put in issue.  75 Ark. 297; 171 S. W. 149; 190 S. W. 290; 21 Cyc. 907-8.

3.  Ernest Fountain was not a competent juror and the court erred in not setting aside the verdict and granting a new trial.  104 Ark. 606; *Ib.* 616; 178 S. W. 328; 72 Ark. 158.

4.  The burden was on the State to show the purity of the trial, and no proof was offered to show that defendant was not prejudiced by the conduct of the juror.  44 Ark. 115; 109 *Id.* 193.

5.  It was error to admit the testimony of Giles Dearing.  It was a privileged communication.  C. & M. Dig., § 4146.

The facts of this case are substantially the same as in 190 S. W. 290.

*J. S. Utley,* Attorney General, *Elbert Godwin* and *W. T. Hammock,* Assistants, for appellee.

1. There was no error in refusing instruction No. 1 for defendant. The use of the word *"exculpating"* was not prejudicial. Webster Dict., *verbum.*

2. There was no error in permitting H. T. Mitchell and W. A. Weaver to testify that the reputation of deceased as a peaceable, law-abiding citizen, was good.

3. There was no error in permitting the testimony of Mitchell and Weaver to go to the jury.

4. The record fails to show that Ernest Fountain, a juror, was not a competent juror. The objections came too late—after the verdict. 40 Ark. 511; 19 *Id.* 156; 20 *Id.* 50; 29 *Id.* 99.

5. There was no error in admitting the testimony of Giles Dearing. No proper exceptions were saved and the objections were waived. 2 R. C. L. 96-7.

HART, J. George Fisher was indicted for the crime of murder in the first degree, and was convicted of the crime of murder in the second degree, his punishment being fixed by the jury at twenty-one years in the State penitentiary. From the judgment of conviction the defendant has duly prosecuted an appeal to this court.

It appears from the record that the defendant shot and killed Jess Moore with a pistol in the town of Wynne, in Cross County, Arkansas, on the 16th day of July, 1920.

According to the witnesses for the State, Jess Moore, with two other men beside him, was sitting down near the depot in the town of Wynne when the defendant, George Fisher, approached them and sat down beside them, being the farthest away from Jess Moore. He spoke to them as he came up, and, after sitting there a few minutes, he arose and said, "Jess, you have done me dirty," and then shot Jess Moore twice with a pistol. Jess Moore rose up and exclaimed, "Oh, George, don't do that." At the time he was staggering around on the sidewalk. The defendant replied, "You have done

enough to me," and shot him twice more. The deceased was unarmed at the time and made no attempt to shoot or otherwise injure the defendant.

According to the testimony of the witnesses for the defendant, the defendant lived at the town of Tilton, just north of the town of Fair Oaks, where Jess Moore lived. Both of these towns are situated in Cross County and not far from Wynne, the county seat. The wife of the defendant ran a boarding house at Tilton, and the deceased was accustomed to go there every other night ostensibly for the purpose of eating supper, but in reality to visit the defendant's wife. It finally came to the knowledge of the defendant that the deceased was visiting his wife. Finally the defendant's wife went to St. Louis, Mo., on a visit to her relatives, and on her return stopped at Wynne and did not come home. The defendant went over there to induce her to come home, but was unable to do so. He was on his way to the depot to take a local freight train for his home when the shooting occurred. According to the defendant's testimony, the deceased made an effort to shoot him, and he shot him in his necessary self-defense.

A daughter of the defendant testified at the trial that she found a letter from the deceased to her mother in which he urged her to act in such a way that her husband would leave her so that he, the deceased, might then get to live with her. The deceased said in his letter that he could not live without her. Some testimony was introduced by the defendant tending to show that he was insane at the time of the killing.

No complaint is made by the defendant that the evidence is not legally sufficient to support the verdict, and it is only necessary to say that a reading of the evidence for the State shows that it was amply sufficient for that purpose.

It is insisted by counsel for the defendant that the court erred in refusing instruction No. 1, asked by the defendant, which is as follows:

"The jury are instructed that defendant had a right to show all the circumstances connected with the killing of the deceased and to prove the illicit relations, if any, between deceased and wife of defendant, and that they may take all such facts and circumstances into consideration as exculpating the defendant or in mitigation of the punishment."

The court was right in refusing this instruction. The fact that the deceased may have had illicit relations with the wife of the defendant did not excuse or justify the homicide under our statutes. Crawford & Moses' Digest, §§ 2338-2383.

It is also insisted that the court erred in admitting the testimony of Giles Dearing. The latter was deputy prosecuting attorney of the county, and the court permitted him to testify before the jury that the defendant came to his house on the evening before the killing and asked him a number of questions relative to whether the deceased and the defendant's wife had violated the criminal laws. From the information elicited by the questions, the deputy prosecuting attorney told the defendant that there was not sufficient evidence to warrant him in prosecuting the deceased and advised him that he might get a divorce from his wife. The defendant did not consult Dearing for the purpose of employing him as his attorney. He only consulted him as a public prosecutor. His testimony did not concern any communication made to him as attorney by the defendant as his client, or his advice thereon. Therefore no confidential relation existed between them which would prevent the witness from testifying concerning the matters talked about without the consent of the defendant.

Again it is contended by counsel for the defendant that the court erred in permitting witnesses to testify for the State that the reputation of the deceased for being a peaceable and law-abiding citizen was good.

In *Bloomer* v. *State*, 75 Ark. 297, the court held that it is well settled in this State that evidence on the part of

the prosecution that the deceased was a man of good character for peace and quietude should not be admitted unless the defendant had undertaken to attack the character of the deceased. See, also, *Kelley* v. *State,* 146 Ark. 509.

The Attorney General conceded that the reputation of the deceased for peaceableness is not admissible as original evidence against one charged with murder where self-defense is relied upon. He contends, however, that the evidence of the defendant himself conflicted with the evidence in behalf of the State and made an issue on the question of who was the aggressor. The defendant, in order to corroborate his own testimony that the deceased was the aggressor, introduced several witnesses who testified that the deceased asked to borrow a pistol from them and gave as a reason that he was going to walk from Fair Oaks to Tilton in the night time and did not want to do so without having a pistol. They refused to let him have a pistol.

Another witness testified that the deceased approached him in the same way, and that he let him have a pistol on one occasion to carry with him from Fair Oaks to Tilton in the night time.

Another witness testified that he frequently let the deceased have his pistol to carry with him on his night trips from Fair Oaks to Tilton, and that on each occasion the deceased would return the pistol to his store on the day following. After the witness heard that the deceased was visiting the defendant's wife at Tilton he refused to let him have his pistol any more.

It is insisted by the Attorney General that this testimony introduced by the defendant was sufficient to bring the case within the rule announced in *Carr* v. *State,* 147 Ark. 524. We can not agree with the Attorney General in his contention. We do not think what the defendant proved concerning the deceased was equivalent to proving his general character as a violent, quarrelsome and fighting man. It is clear that the proof made in the

Carr case by the defendant as to the character of the deceased was of an entirely different nature from the proof made in the case at bar. In that case the defendant offered to prove that the deceased had had numerous fights, paid a fine for each one of them; that he had had several quarrels with other persons; that he had beat up others; that he had killed a negro; and these matters all came along in such consecutive order that the court was of the opinion that they showed the general reputation of the deceased to be that of a violent, turbulent and fighting man. Here the deceased did not own any pistol, did not habitually carry one, and only wanted to carry it on the occasions when he went from Fair Oaks to Tilton in the night time. On each occasion that he borrowed the pistol he returned it on the next day. The evidence does not show that he went armed on other occasions. He was unarmed at the time he was killed. It was not shown that he had had any previous difficulties with the defendant or any other person. The mere fact that testimony was introduced tending to show that he visited the defendant's wife and returned home in the night time and borrowed a pistol frequently on such occasions, does not establish his general reputation as being that of a violent, quarrelsome and fighting man.

The character of the deceased as being peaceful and quiet is presumed to be good until the contrary appears, and, the testimony of the defendant not being sufficient to show that the general reputation of the deceased in that respect was that of a quarrelsome and fighting man, the State was not entitled to introduce original evidence upon that subject.

It necessarily follows that, if the proof was incompetent, it was prejudicial to the defendant.

For the error in admitting it, the judgment must be reversed and the cause will be remanded for a new trial.