MODE *v.* STATE.

5011                                    350 S. W. 2d 675

Opinion delivered October 30, 1961.

[Rehearing denied December 4, 1961.]

*Brazil & Brazil, Holt, Park & Holt* and *Hardin, Barton & Hardin,* for appellant.

*Frank Holt,* Attorney General, by *Thorp Thomas,* Asst. Attorney General, for appellee.

ED. F. McFADDIN, Associate Justice. From a conviction of second degree murder for the homicide of D. L. Russell, Lee Mode prosecutes the present appeal. The first appeal is *Mode* v. *State,* 231 Ark. 477, 330 S. W. 2d 88, wherein we recited the facts and held that the appellant had shown only one error in the trial, which

error concerned an instruction. The cause was remanded and, on retrial, Mode was again convicted of second degree murder and now prosecutes the present appeal. The error in the instruction in the first trial did not occur in the second trial.

With only a few exceptions, to be subsequently noted, the assignments in the motion for new trial in the present appeal are the same as the assignments in the motion for new trial in the first appeal, since the evidence offered and the rulings made were practically the same in both trials. The rule of "law of the case" precludes the appellant from now urging any point that was assigned as error on the first appeal. *Rankin* v. *Schofield,* 81 Ark. 440, 98 S. W. 674; *St. L. I. M. & S. Ry. Co.* v. *Hill,* 92 Ark. 484, 123 S. W. 760; *St. L. I. M. & S. Ry. Co.* v. *DeLambert,* 120 Ark. 61, 178 S. W. 926; and *Ford Motor Co.* v. *Fish,* 232 Ark. 270, 346 S. W. 2d 469. In *Bowman* v. *State,* 93 Ark. 168, 129 S. W. 80, this Court held that the rule of "law of the case" was applicable to criminal cases as well as to civil cases, and such is also the rule in other jurisdictions. In 24 C. J. S. 690, "Criminal Law" § 1840, under the topic, "Former Decision as Law of Case." Cases from sixteen jurisdictions are cited to sustain this statement:

"Generally, the determination of the appellate court as to all questions within the record which are or might have been raised and decided will be the law of that case in subsequent proceedings in the case."

The text also says:

"Hence, a decision on a prior appeal in the same case as to the sufficiency of the evidence to authorize a conviction . . . is the law of the case on a subsequent appeal, where practically the same evidence is involved."

Our long established rule in felony appeals is that this Court will consider every assignment in the motion for new trial, regardless of whether the assignment be

argued in the briefs. In *Martin* v. *State,* 206 Ark. 151, 174 S. W. 2d 242, we said:

"For reversal he has brought forward in his motion for a new trial fourteen assignments of error. While appellant, in his brief, argues but one alleged error—that the evidence is not sufficient to support the verdict—it becomes our duty, since appellant is charged with a felony, to consider all other alleged errors contained in the motion for a new trial, whether argued in appellant's brief or not. *Eveland* v. *State,* use of Fossett, 189 Ark. 517, 74 S. W. 2d 221; *Van Hook* v. *Helena,* 170 Ark. 1083, 282 S. W. 673; *Knighton* v. *State,* 169 Ark. 293, 274 S. W. 10, and *Babers* v. *State,* 168 Ark. 1055, 272 S. W. 659."

See also *Boyd* v. *State,* 215 Ark. 156, 219 S. W. 2d 623.

The application of the foregoing rules means that the appellant is now precluded from urging as error any assignment in the motion for new trial in the present appeal if that assignment was contained in the motion for new trial in the first appeal, and based on a record exception. This is a sound rule:[1] it prevents an appellant from failing to argue a point on the first appeal in order to save it as a possible ground for reversal should he be convicted at a second trial, and thus obtain a successive number of trials, with each involving an identical ruling in a previous trial, which ruling was not argued on the previous appeal.

We have made a careful comparison of the assignments contained in the motion for new trial in the present appeal, as against those contained in the motion for new trial in the first appeal. Under the rule of "law of the case," we eliminate all such, and we proceed now to discuss the assignments concerning matters which were not foreclosed by the first appeal.

---

[1] This is particularly demonstrated in the case at bar wherein the opinion on the first appeal concludes with the language: "Appellant argues several other points, all of which we have examined, but we find no error other than the giving of Instruction No. 9."

## I.

*Testimony Of Jerry Russell At The Former Trial.*
Jerry Russell testified in the first trial, and a transcript
of his testimony was read at the present trial after the
State had offered evidence that the witness could not be
found. Appellant claims the Court committed error in
allowing the transcript of testimony to be read to the
jury. The efforts to locate the witness were shown in
considerable detail: subpoenas were returned "non-
est," the State Police had been unsuccessful in a search
for the witness, and the grandparents of the witness
testified that they did not know where he was. In the
light of such showing, we find no error committed by
the Trial Court in allowing the State to read to the jury
the testimony of the witness given at the former trial.
Section 28-713 Ark. Stats. is the applicable statute, and
says, *inter alia, that such former testimony may be read*
to the jury ". . . when for any reason the former
witness may not be available." There was such a show-
ing in this case. The objections to the content of the
testimony of the witness, Jerry Russell, are foreclosed by
the rule of "law of the case," *supra.*

## II.

*Relationship Between Mr. Mode And Mrs. Russell*
*Subsequent To The Homicide.* The witness, Clara Eggle-
ston, introduced pictures of Mrs. Mildred Russell (wife
of the deceased) taken in Sallisaw, Oklahoma, in 1959
and 1960. The witness also testified that in June, July,
and August, 1959, Mrs. Russell was then going under the
name of Mildred Mode and was living with Lee Mode in
a trailer court in Sallisaw, Oklahoma. Two other wit-
nesses also testified as to pictures of Mrs. Mildred Rus-
sell taken about the same time in Sallisaw, Oklahoma.
In admitting such testimony of these witnesses, the Trial
Court ruled:

"The court will repeat at this time that this testi-
mony tending to show this association or togetherness
of the two parties, that is, Mildred Russell and Lee Mode,

if it does show, is admitted for the purpose of shedding light, if it does shed light, upon any motive for the killing involved in the trial of this case and to the relationship of the parties, if it does shed such light, prior to the difficulty or trouble resulting in the death of D. L. Russell, and it is not to be considered for any other purpose.''

We find no error in the Court's ruling. In *Hornsby* v. *State,* 163 Ark. 396, 260 S. W. 41, Hornsby was accused of killing Mr. Fells because of Hornsby's love and infatuation for Mrs. Fells. In that case the Trial Court allowed letters to be introduced that Hornsby had written Mrs. Fells after they were put in jail. This Court affirmed the ruling of the Trial Court, saying:

''The court did not err in permitting the State to introduce the letters of the appellant to Mrs. Fells after they were put in jail. These letters were identified as the letters of the appellant, and he does not dispute that they were his letters. They were filled with protestations of love for Mrs. Fells, and tended to corroborate her testimony to the effect that appellant was in love with her at the time he killed Fells, and tended to prove a motive on the part of the appellant for killing Fells. *Stokes* v. *State,* 71 Ark. 112-117. 'The State may show the existence of a motive for taking the life of the deceased in determining guilt or innocence of the accused.' *Avery* v. *State,* 149 Ark. 642, and cases there cited. See also *Sneed* v. *State,* 159 Ark. 65-72.''

So, in the case at bar, the evidence that Mrs. Russell and Mr. Mode were living together in a trailer court in Sallisaw, Oklahoma during the summer of 1959 would be admissible on the question of motive, if any, as to the cause of the homicide; and also the conduct of Mode and

So, in the case at bar, the evidence that Mrs. Russell and Mr. Mode were living together in a trailer court in Sallisaw, Oklahoma during the summer of 1959 would be admissible on the question of motive, if any, as to the cause of the homicide; and also the conduct of Mode and Mrs. Russell subsequent to the homicide could be shown

as shedding light on the relationship toward each other prior to the homicide.

## III

*Evidence of Good Character of Deceased.* This is the point that has given us the most serious concern.[2] Assignment No. 43 in the motion for new trial reads:

"The court erred in admitting the testimony of Ted L. Welborn, over the objection and exceptions of the defendant, to the effect that the reputation of D. L. Russell was good; that he was a peaceable, law-abiding citizen; to which ruling of the court the defendant at the time objected and duly saved his exceptions."

This assignment cannot be disposed of by the rule of "law of the case" because, in the first trial, there was no objection to testimony of the good character of the deceased. But in the trial from whence comes this appeal, the following occurred when the witness Welborn was testifying for the State on rebuttal:

"Q. Did you know D. L. Russell prior to his death?

A. Yes, sir.

Q. Was he a resident of Faulkner County?

A. He was.

Q. Did you know his reputation among those who knew him for being a peaceable law abiding citizen?

MR. HOLT: We object to that, as being improper.

BY THE COURT: Your objection will be overruled.

MR. HOLT: Save our exceptions.

---

[2] This point was not argued in the appellant's brief but was urged in the oral argument. Because of our rule previously mentioned—that in felony cases this Court examines all assignments in the motion for new trial—this point is properly before us because it was an assignment in the motion for new trial. The rule in felony cases is different from the rule in civil cases, in which latter we consider only the points listed in the briefs.

A. I do.

Q. Did you know him on October 13, 1958?

A. I did.

Q. Do you know what his reputation was on October 13, 1958 for being a peaceable, law-abiding citizen?

A. I think so, yes, sir.

Q. What was that reputation, good or bad?

A. Well — that puts me on the spot. There had been a disturbance that I had been called to.

Q. We are talking about his reputation, Mr. Welborn.

A. His reputation was good.

Q. Those times that you were called, you testified about those yesterday?

A. Yes, sir.

Q. Once at the instance of 'Mutt' Jones?

A. That is right.

Q. And the instance of Lee Mode?

A. Yes, sir.

Q. And once at the instance of Gerald Mode?

A. That is right."

Appellant insists that the general reputation of D. L. Russell for being a peaceable and law-abiding citizen had never been attacked by evidence offered by the defense, and for that reason it was fatal error for the Court to allow the State on rebuttal to show Russell's reputation as being a peaceable and law-abiding citizen. We have a number of cases which deal with various phases of this matter, but in each there was a state of facts different from those presented in the case at bar. Some such cases are: *Palmore* v. *State*, 29 Ark. 248; *Bloomer* v. *State*, 75 Ark. 297, 87 S. W. 438; *Bryant* v. *State*, 95

Ark. 239, 129 S. W. 295; *Shuffield* v. *State,* 120 Ark. 458, 179 S. W. 650; *Kelley* v. *State,* 146 Ark. 509, 226 S. W. 137; *Carr* v. *State,* 147 Ark. 524, 227 S. W. 776; *Fisher* v. *State,* 149 Ark. 48, 231 S. W. 181; *Jett* v. *State,* 151 Ark. 439, 236 S. W. 621; *Bogue* v. *State,* 152 Ark. 378, 238 S. W. 64; *Bridges* v. *State,* 169 Ark. 335, 275 S. W. 671: *Day* v. *State,* 185 Ark. 710, 49 S. W. 2d 380; and *Burton* v. *State,* 204 Ark. 548, 163 S. W. 2d 160.

From these cases, we recognize the pertinent rules in Arkansas in a homicide case (as is the one at bar) to be: (a) that in the case in chief the State may not show the general reputation of the deceased as a peaceable and law-abiding citizen; (b) that unless the defendant undertakes to show that the deceased was not a peaceable and law-abiding citizen, then the State may not, on rebuttal, offer evidence of such good reputation; and (c) that bad reputation may not be shown by testimony as to specific acts of violence or turbulence. These are the general rules, but in the case at bar the defendant, under his claim of self-defense, showed — as was his right — a vast number of specific acts of bad conduct on the part of the deceased. This testimony related to threats, shooting, carrying a gun, fighting, etc., concerning all of which Mode was aware personally or was so advised by others. We list the following specific instances, wherein the defense elicited testimony about the conduct of the deceased;

(a) Witness Dave Ward testified that a year before the fatal shooting, Russell told Ward that he (Russell) was carrying a gun for Mode and that he was going to kill Mode; that Ward conveyed that threat to Mode; that Ward got Russell to put up his gun in July, and Russell said he could kill Mode without a gun; that hard feelings existed between Russell and Mode; that Ward saw a gun in the glove compartment of Russell's car two or three times; that Russell "jumped on" John McCracken and got into a heated argument with Ward and Elbert Ryan, Shop Superintendent, in Ward's office in July.

(b) Roy Barton testified that Russell came to his garage one day looking for Mode; that Russell was "mad" and said that if he found Mode he would kill him.

(c) George W. Robinson testified that Russell asked him if he had a gun (which he didn't); that Russell cursed and said he was getting tired of Mode coming out to his house; that the next time or two Russell went to town he "picked up a gun" and said he was going up there and get some shells and kill Mr. Mode and J. D. (Mode) both, if necessary; that Robinson told Mr. Mode about the threats and told Mode "to watch him — to watch out for him."

(d) Virgil McCoy testified that Russell said he didn't want Mode out on the farm — that he was going to shoot him if he came back out there; and McCoy gave the information to Mode.

(e) Charles Hartsell testified that Russell came to Mode's house, cursed Mode, and told him to come out, and then stated that he would kill him if he did come out.

(f) Bruce Henderson testified that Russell tried to borrow a gun from him; that, later, Russell had a gun that was jammed and asked Henderson to show him how it would shoot; that he said he took the gun from Mode and wanted it with which to kill Mode.

(g) Leo Looper testified that Russell said he and Mode were having trouble, and Russell cursed and said if he could find Mode he would kill him.

(h) Elmer Joe Swaffer testified that Russell attacked Mr. Mode — made a lunge at Mode and grabbed him around the neck (at the fatal encounter).

(i) Gerald Mode testified that Russell came to Mode's house and cursed him and threatened to kill him; that Russell told Gerald downtown that he would get his father, Lee Mode, sooner or later, and that Russell came to Mode's house one night and shot two or three times over the house.

We hold that when the defense offered all of the foregoing evidence, the defense thereby opened the door for the State to show on rebuttal the general reputation of the deceased Russell as a peaceable and law-abiding citizen. Such evidence certainly tended to rebut the defendant's evidence as to acts of bad conduct, turbulence and violence on the part of the deceased. Even though general reputation cannot be shown by acts of specific misconduct, yet when, under the claim of self-defense, there is offered — as here — such an abundance of testimony of specific acts of bad conduct as to present a picture of the deceased being a violent and turbulent man, then the defense has, in effect, attacked the good reputation of the deceased and has opened the door for the State to show on rebuttal the general reputation of the deceased as a paeceable and law-abiding citizen. In *Carr* v. *State,* 147 Ark. 524, 227 S. W. 776, the appellant attacked the reputation of the deceased for peace and quietude; the State introduced a witness to show that the reputation of the deceased was good. Appellant attempted on cross-examination of the witness to elicit his knowledge of acts of violence on the part of the deceased indicating otherwise. The defense offered to show testimony of nine specific acts of violence, but this evidence was rejected. In holding that the Court was in error in refusing the proffered testimony, we said:

"We think the form of the question immaterial in the instant case, because the very nature of the specific acts of violence offered to be established by the witness were of such a notorious and public nature within themselves as would tend to establish general reputation. Especially is that true in view of the great number of violent acts offered to be proved, covering so short a period of time."

It is true that in two subsequent cases there were attempts by this Court to limit or distinguish the language in the Carr case. These cases are *Fisher* v. *State,* 149 Ark. 48, 231 S. W. 181, and *Bridges* v. *State,* 169 Ark.

335, 275 S. W. 671. In each of these cases the factual situations and the defenses were different from those in the Carr case and also in the case at bar. In *Bridges* v. *State, supra,* there was no plea of self-defense and no testimony of threats offered by the deceased against the appellant, and no evidence of specific acts of violence by the deceased. So the Bridges case is not in point. In *Fisher* v. *State, supra,* the defense offered evidence about the deceased seeking to borrow a pistol, and the State contended that such testimony allowed the State, on rebuttal, to show the good reputation of the deceased. But this Court said:

"We do not think what the defendant proved concerning the deceased was equivalent to proving his geveral character as a violent, quarrelsome and fighting man. It is clear that the proof made in the Carr case by the defendant as to the character of the deceased was of an entirely different nature from the proof made in the case at bar . . . The character of the deceased as being peaceful and quiet is presumed to be good until the contrary appears, and, the testimony of the defendant not being sufficient to show that the general reputation of the deceased in that respect was that of a quarrelsome and fighting man, the State was not entitled to introduce original evidence upon that subject."

The case of *Bryant* v. *State,* 95 Ark. 239, 129 S. W. 295, shows how slight need be the evidence offered by the defense in order for the State on rebuttal to show the general reputation of the deceased. In that case, Mr. Justice Battle, speaking for the Court, said:

"On cross examination of Mrs. Minta Potter, the widow of the man killed, the witness testified that the deceased 'was quick to get mad and fight, and he was a brave man, and would fight at the drop of a hat.' The State by many witnesses proved in rebuttal that the general reputation of the deceased for being a quiet peaceable citizen was good. The appellant contends that the court erred in admitting it. It was only admissible for the purpose of sustaining the reputation of the de-

ceased after it had been attacked. In this case the evidence adduced by the defendant on cross-examination tended to prove that the deceased was aggressive, quick to take offense, and resent it with force unnecessarily. The evidence adduced by the State was admissible to remove such impression. Wharton on Homicide (3 ed.), — 269, and cases cited.''

Our holding, that the Defense opened the door to allow the questioned testimony on rebuttal, is in accord with the holdings in other jurisdictions and also in accord with the text writers.[3]

The case of *State* v. *Rutledge,* 243 Iowa 179, 47 N. W. 2d 251, goes thoroughly into the matter. Testimony was admitted in rebuttal that deceased was a quiet and peaceable citizen, and the defense asserted that no attack had been made on deceased's character or reputation and that the admission of the evidence constituted error. The testimony complained of was to the effect that deceased had made various telephone calls to the accused in which he abused, cursed, and threatened to come to the hospital and beat him up; that he brandished a knife while talking to defendant's detective and told him to warn defendant that he was not a doctor but that he could operate; and that deceased was frequently intoxicated. In holding that the testimony concerning deceased's good character as a quiet and peaceable citizen was admissible in rebuttal, the Iowa Sureme Court said:

''40 C. J. S. Homicide, § 272e, pp. 1225, 1226, states although such evidence cannot be introduced by the prosecution in the first instance, where the accused, in a homicide case in which self defense has been set up, has introduced evidence tending to show the turbulent, violent and quarrelsome character of the deceased, the prosecution may in rebuttal introduce reputation or character evidence to the contrary. 26 Am. Jur. 397, Homicide, section 349, states: 'No general rule can be

---

[3] There is an enlightening discussion in McCormick on Evidence, pages 339 and 340.

laid down for the determination of what will be held to constitute an attack by the defendant upon the character or reputation of the deceased, so as to open the door for rebuttal evidence; each case must be decided according to the circumstances thereof.' . . . Most authorities hold the attack on the character of the deceased need not be direct as to his character or reputation to render admissible in rebuttal evidence of his good character as to being a quiet and peaceable citizen. Whether the attack is made by evidence of general reputation or otherwise the state may meet it by evidence of such good character. We hold the evidence introduced by the defense in this case constituted an attack upon Hattman's character within the rule above mentioned.''

Another case is *Sweazy* v. *State,* 210 Ind. 674, 5 N. E. 2d 511. The question presented was whether testimony as to the general reputation of the deceased for peace and quietude could be introduced. The Indiana Supreme Court said:

''We think the evidence competent and material. Appellant testified in his own behalf and claimed that the deceased made an attack upon him. That he was standing in the doorway with his gun standing beside him, and as soon as the deceased observed his presence he made the remark, 'There is the so of b' and raised his gun and shot appellant. This is a direct attack upon the character of the deceased and put his reputation for peace and quietude in issue. While appellant's defense was not self defense, yet he charged the deceased as being the aggressor and making the assault upon him.'' The Indiana Court further quoted from *Fields* v. *State* (1892), 134 Ind. 46, 32 N. E. 780, as follows:

'' 'The defendant testified that the deceased assaulted him, and that he apprehended great injury to life or limb from the assault. On rebuttal the court permitted the state to prove that the deceased was a peaceable, quiet man. This was not erroneous.' ''

The question was before the New Mexico Supreme Court in *State* v. *Brock,* 56 N. M. 338, 244 P. 2d 131,

wherein the specific acts testified to were as follows: Deceased came to defendant's house and asked to borrow money to help pay for a rifle, and was refused. Thereupon, deceased made the statement that if the defendant didn't get out of there he would throw him out or blow him out. The same threat was repeated on two subsequent occasions. Later, when the two were attempting to talk things over, deceased pulled a gun on defendant and defendant shot first and killed deceased. In holding that testimony concerning deceased's reputation for being a quiet and peaceable man was admissible on rebuttal, the New Mexico Court cited, *inter alia, State* v. *Todd,* 28 N. M. 518, 214 P. 899; *State* v. *Rutledge* 243 Iowa, 179, 47 N. W. 2d 251; and *DeWoody* v. *State,* 21 Ariz. 613, 193 P. 299; and quoted from the DeWoody opinion, as follows:

" 'It is to be observed, however, that when the defense in a prosecution for homicide puts the character of the deceased as a quarrelsome, turbulent or violent and dangerous man in issue, the state may support it by proofs that the deceased was a peaceable, quiet, and law-abiding man. Wharton on Homicide (3d Ed.) par. 269. Furthermore, the attack on the character of the deceased need not be direct as to his general reputation to render admissible evidence of his good character on the part of the state. It is immaterial in what manner the attack is made, whether by evidence of general reputation or by any other species of evidence. If the issue is raised by the defense at all, the state may meet it by evidence of general reputation as to good character. Wharton on Homicide, 3d Ed., par. 270; *People* v. *Gallagher,* 174 N. Y. 505, 66 N. E. 1113, affirming 75 App. Div. 39, 78 N. Y. S. 5. No general rule can be laid down for the determination of what will be held to constitute an attack by the defendant on the character of the deceased so as to "open the door" for rebuttal on behalf of the state, but each case must be decided according to its own circumstances or facts. 13 R. C. L., par. 219, p. 917; *Kelly* v. *People, supra.* (229 Ill. 81. 82 N. E. 198. 12 L. R. A. N. S., 1169.)' "

## CONCLUSION

We have carefully considered all the assignments and find no error.

Affirmed.

Johnson, J., dissents.

Jim Johnson, Associate Justice, dissenting. This case is before us for the second time. I was convinced that the judgment in the former appeal, *Mode* v. *State,* 231 Ark. 477, 330 S. W. 2d 88, should have been affirmed and so voted. In that case I found no reversible error nor did I find any erroneous extension by this Court of the basic rules of criminal procedure. I view these rules as sacred rights which belong to every accused whether that person be guilty or innocent and consider any court's extension of those rules beyond its province.

The majority's discussion of appellate procedure in felony cases gives me much concern. The majority has applied several rules of practice in a manner which seems inconsistent with the purpose of those rules.

I find no statutory equivalent in felony appeals of the mandate of Ark. Stats. § 43-2723 in capital appeals. No doubt the purpose of the legislature in enacting § 43-2723 was to make certain that no conviction of a capital offense will be allowed to stand unless the defendant received a trial which was consistent with the fundamental standards of due process and procedural fairness. The statute requires the court to review the entire record for prejudicial error before affirming a conviction. If such error does appear the conviction must be reversed, whether the error was argued by counsel or not.

The requirement in felony appeals to review all errors contained in the motion for new trial, whether or not argued in the appellant's brief is an extension in case law of the duty imposed by § 43-2723. The same considerations underlying the statute are presented in felony appeals.

In both instances it is my view that the duty of the court to examine the record for error is at an end when reversible error is found. Of course, the court may wish to continue to examine other assignments after finding reversible error. *Rand* v. *State,* 232 Ark. 909, 341 S. W. 2d 9. If this is done and those assignments are discussed and actual findings are made, I agree that on these points there is a binding determination. On a subsequent appeal the defendant would normally be precluded from arguing those same assignments of error which had actually been passed on. The reason for this is simply that those assignments, supported by the same proof, with the same objections and exceptions, would be as much without merit on the second appeal as on the first.

On the previous appeal appellant argued only nine points in his brief. This Court in its opinion thoroughly discussed only two of these points and generally discussed the remaining seven points in the following language: "Appellant argues several other points, all of which we have examined, but we find no error other than the giving of Instruction No. 9." Yet the record in the first appeal reveals that no less than 64 assignments of error were contained in the motion for new trial. It is my view that those assignments not argued in the nine points upon which this Court actually passed do not become the "law of the case."

The majority under the heading *"Evidence of Good Character of Deceased"* devotes the major portion of its opinion to an assignment of error which was contained in appellant's motion for new trial in the first appeal. After a careful re-reading of the briefs in that case I have been unable to find one word of argument relative to this assignment contained in the nine points upon which this Court actually passed. Except for the discovery of the absence of an objection to testimony of the good character of the deceased on the first appeal, according to the majority opinion, consideration of this assignment also would have been foreclosed under their rule of "the law of the case."

Under my view this assignment is properly before this Court regardless of the absence of an objection in the previous trial, since this Court did not actually pass upon this matter on the first appeal. With the point properly before us I am convinced that the majority opinion has effectively held that the entry of a plea of self-defense in a homicide case is sufficient to allow the prosecution to introduce evidence of the deceased's reputation for peace and quiet in rebuttal.

It has never been the rule in homicide cases in this State to allow the prosecution to introduce evidence of the deceased's reputation for peace and quiet when the issue of self-defense is raised. As was said in *Bloomer* v. *State,* 75 Ark. 297, 87 S. W. 438: ". . . *It is now* well settled that such evidence on the part of the prosecution should not be admitted unless the defendant has undertaken to attack the character of the deceased in that respect. *Ben* v. *State,* 37 Ala. 103; Bishop, Crim. Proc. (3rd ed.), § 612."

That rule was reaffirmed in *Carr* v. *State,* 147 Ark. 524, 227 S. W. 776; and in *Fisher* v. *State,* 149 Ark. 48, 231 S. W. 181. As Justice Wood observed in *Bridges* v. *State,* 169 Ark. 335, 275 S. W. 671, the *Carr* and *Bloomer* cases are not in conflict on this point:

". . . As stated in the opinion, the question presented by the record in the *Carr* case was 'whether a character witness who testified to the good reputation of the deceased could, on cross-examination, be interrogated concerning specific acts of violence on the part of the deceased within the personal knowledge of the witness to test the soundness of the statement of the witness tending to establish the good character of the deceased.' "The question in the case at bar, therefore, was not presented and not under consideration in the *Carr* case, and it was not in the thought of the court in that case to announce a doctrine in conflict with the decision of this court in *Bloomer* v. *State, supra,* which doctrine has been since approved in *Fisher* v. *State, supra.* Taking the opinion of the *Carr* case in connection with the

facts of that case, the language upon which the Attorney General relies only meant that the general reputation of the deceased for peace and quiet was admissible in evidence by the State *to rebut the testimony given by the defendant in which an attack had been made upon such reputation,* **and therefore the *Carr*** case is not out of harmony with our former decisions.'' [Emphasis supplied.]

I do not agree with the majority in their conclusion that a plea of self-defense was not entered in the *Bridges* case, *supra.* Be that as it may, in my view neither the *Carr* case nor the *Bridges* case, as to the facts contained therein, aid the Court in deciding the present appeal since it was assumed in both instances that the defendant's testimony was or was not an attack on the deceased's reputation for peace and quiet.

Certainly the right of a defendant upon entry of a plea of self-defense to show that the deceased was a violent and dangerous man can not be questioned. *Palmore* v. *State,* 29 Ark. 248; *Edwards* v. *State,* 208 Ark. 231, 185 S. W. 2d 556. In every case where the defendant has introduced evidence in support of his plea the issue remains to be decided whether that evidence constituted an attack on the deceased's reputation for peace and quiet that would allow the prosecution to offer evidence of the deceased's good reputation in rebuttal. *Carr* v. *State, supra; Bridges* v. *State, supra.*

In the case at bar the defendant's evidence was not sufficient to constitute a general attack on the deceased's reputation for peace and quiet to allow the prosecution to offer evidence in rebuttal. Although the incidents that were related in the testimony did occur over a period of time, in each instance the testimony tended to show only the ill feeling and animosity of the deceased toward the defendant.

Under this view *Bryant* v. *State,* 95 Ark. 239, 129 S. W. 295, is distinguishable from the present case. As that portion of the opinion quoted by the majority indicates the widow of the deceased testified on cross-

examination that the deceased ''was quick to get mad and fight, and he was a brave man, and would fight at the drop of a hat.'' This testimony clearly was a direct attack on the reputation of the deceased, whereas the testimony in this case is evidence of the ill feeling of the deceased toward the defendant and that the deceased was the aggressor.

The cases cited in the majority opinion from foreign jurisdictions announcing a doctrine contrary to our own, might be persuasive to me if this were a matter of first impression in this state, but, as indicated above, such is not the case. The text writers have long recognized the existence of the minority rule, and have never placed Arkansas in that group. 1 Wigmore, Evidence, § 63 (3rd Ed., 1949); Note, 3 Ark. L. Rev. 464 (1949); Anno., 34 A. L. R. 2d 451 (1954). Therefore, it is my opinion that whatever may be the ruling elsewhere, I consider our own cases sound, and here refuse to be a party to the extension of our basic rules of criminal procedure. For the reasons stated above, I respectfully dissent.